[No. 22661. *En Banc.* August 4, 1930.]

THE STATE OF WASHINGTON, *on the Relation of L. G. Weston, Plaintiff,* v. LAURA SCHRAGG, *Respondent.*[1]

*Wm. O. Lewis,* for appellant.
*Richard B. Ott,* for respondent.

FULLERTON, J.—On July 11, 1930, the relator, Weston, duly tendered to the county auditor of Adams county his declaration of candidacy for the nomination, on the democratic party ticket, to the office of county treasurer of the county named to be made at the next ensuing primary election. The county auditor

[1]Reported in 291 Pac. 321.

refused to accept or file the declaration, and thereafter the relator applied to the superior court of the county for a writ of mandate directing her so to do. At the hearing on the application, the superior court refused to grant the writ, and entered an order dismissing the proceedings. The appeal before us is by the relator from the order of dismissal.

The controversy involves the construction of certain provisions of the state constitution, and certain provisions of the state statutes, and it may be well to notice these primarily.

The constitution provides (Article XI, § 7):

"No county officer shall be eligible to hold his office more than two terms in succession."

It also provides (Art. XI, § 5, as amended in 1924 by the twelfth amendment to that instrument):

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: *Provided*, that the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession."

The statutes enacted prior to the legislative assembly of 1925 divided the counties of the state into classes in accordance with population. They also provided for the election of county officers in addition to

those especially enumerated in Art. XI, § 5, among which is a county assessor. At the extraordinary session of 1925, the legislative assembly re-classified the counties, subdividing the counties classified under the earlier classification as belonging to the sixth class into classes designated as sixth class, sixth-B class and sixth-C class; and it was therein provided that all "counties containing a population of 5,000 and less than 8,000 shall belong to and be known as counties of the sixth-B class." The act contained this further provision, namely:

"Sec. 4. At the general county election in the year 1926 and quadrennially thereafter there shall be elected in each county of the sixth-B, sixth-C, and eighth classes a county treasurer who shall, in addition to the powers and duties of treasurer, exercise all the powers and perform all the duties now, or that may be, by law vested in or imposed upon the county assessor of such county, and no assessor shall be elected in such county in the year 1926 or thereafter." Laws of 1925, Ex. Ses., p. 413 [Rem. 1927 Sup., § 4200-4].

The facts disclose that Adams county, when tested by the Federal census of 1920, had a population sufficient to bring it within the classification of a county of the sixth class. It was thus entitled to elect both a county treasurer and a county assessor, and the facts further disclose that, at the quadrennial election of 1926, it did elect officers to each of these offices, and that they have since been administered as separate offices. By the Federal census of 1930, it is shown that the population of the county is over 5,000, but less than 8,000, and that it is now, according to the legislative classification, a county of the sixth-B class. Under the provisions of section 4, above quoted from the act of 1925, there will be no county assessor elected at the coming county quadrennial election, and when the term of the present county assessor expires, the duties

of that office will be vested in, and imposed upon, the county treasurer.

The facts further disclose that the relator now holds the office of county assessor, and has held the office for a full preceding term, so that, at the expiration of his present term, he will have held the office for two terms in succession. The declaration of candidacy which he tendered to the county auditor, and which the county auditor refused to file, is for the office of county treasurer. The offer to file was refused because the county auditor thought him ineligible to hold the office. The reasoning by which this conclusion is reached, as we gather it from the arguments, is in substance this: Since the relator would have been ineligible, under the provision of the constitution, to hold the office of county assessor had that office been continued and had he been elected thereto, he is ineligible to hold any office to which the duties of that office have been transferred, and this notwithstanding it is a separate and distinct office having duties in addition to those transferred to it, and notwithstanding he would have been eligible to hold the office had these duties not been so transferred to it.

The question presented, although a somewhat narrow one, we have not found free from difficulty, nor have we found much to aid in its solution in the adjudicated cases. There are, however, certain general principles which have a bearing on every such question, principles now so uniformly recognized and self-evident that it is only necessary to remind ourselves that they exist. We refer, of course, to the right of all free peoples to form themselves into a commonwealth or state, to prescribe the rules by which they shall be governed, to divide the government into offices, attach to such offices prescribed duties, and to prescribe the qualifications of the persons eligible to

hold such offices and perform and enforce the performance of the duties attached to them.

Since the right to participate in the government is the common right of all, it is the unqualified right of any eligible person within the state to aspire to any of these offices, and equally the unqualified right of the people of the state to choose from among those aspiring the persons who shall hold such offices. It must follow from these considerations that eligibility to an office in the state is to be presumed rather than to be denied, and must further follow that any doubt as to the eligibility of any person to hold an office must be resolved against the doubt.

 Turning to the laws thought to disqualify the relator in this instance, it is at once apparent that they do not meet the precise situation presented. The language of the constitution is that no county ''officer shall be eligible to hold his office more than two terms in succession.'' The possessive pronoun, as here used, must refer to the office the officer is then holding and disqualifies him for the particular office, and that it does not make the holding of one county office for two successive terms a disqualification for holding another and different county office. If, therefore, the offices of county treasurer and county assessor are different offices, then the relator is not disqualified by this provision of the constitution alone from holding the office, but is so, if disqualified at all, by reading the statute in connection with the constitution. But the statute, as we read it, does not continue the office of county assessor. On the contrary, it discontinues it, and vests the duties performed under that office in the office of county treasurer.

Had the legislature continued the office, had provided that no county assessor should be elected, and had made the county treasurer *ex officio* county as-

sessor, a different question might be presented. But it does not do this. It, in effect, abolishes the office of county assessor, and vests the duties formerly performed under that office into another office. There is no question that this was within the power of the legislature. The office of county assessor is not a constitutional office; that is to say, an office provided by the constitution as an essential to county government. It is one created by the legislature, and the same power which authorized its creation authorizes its destruction. In other words, the legislation with respect to this office now stands as it would have stood had the legislature never created the office, but had in the first instance vested the duty of making the assessment in the office of county treasurer. It follows, in our opinion, that there is no office in existence which the relator has held for two successive terms, and that he is, in consequence, eligible to hold any existing county office.

██ But it is argued that this construction of the statute renders it unconstitutional under our holding in the case of *State ex rel. Maulsby v. Fleming,* 88 Wash. 583, 153 Pac. 347, in that it destroys the uniformity of county government. The argument is that the constitutional amendment above quoted is not sufficiently broad to meet the objection of the cited case. But this question we need not determine. If the contention be sound, there is still existing in the county named the independent office of county assessor to which a separate officer may be elected, and since the relator has not filed for that office, but for another and distinct office, there could be no question as to his eligibility.

Since the matter is emergent, let the writ issue forthwith.

MITCHELL, C. J., MILLARD, MAIN, FRENCH, BEALS, and TOLMAN, JJ., concur.