[No. 28769.  Department One.  December 29, 1942.]

THE STATE OF WASHINGTON, *on the Relation of E. H. Wyrick et al., Respondents,* v. THE CITY OF RITZVILLE *et al., Appellants.*[1]

*George H. Freese,* for appellants.

*Miller & Miller,* for respondents.

STEINERT, J.—This case comes to us on an agreed statement of facts.  The city of Ritzville is a municipal corporation of the third class.  The present mayor, clerk, treasurer, and four of its councilmen were regularly elected on December 10, 1940, and took office on the first Tuesday in January, 1941.  Another of its

[1]Reported in 132 P. (2d) 737.

councilmen was elected in December, 1938, and took office in January, 1939. Two others of its councilmen were appointed on January 7, 1941, and August 10, 1941, respectively, to fill the unexpired four-year terms of two former councilmen who had been elected in 1938 and qualified in 1939. At all times hereinafter mentioned, all of the foregoing officers were serving in their respective capacities by virtue of their election or appointment as indicated above.

Prior to July, 1941, these respective officers, with the exception of councilman Bill Thiel, who was a subsequent appointee, had all served without salary or other compensation, there being no warrant in law at that time for compensating them for the performance of their official duties. At its 1941 session, the legislature enacted chapter 115, Laws of 1941, providing for reimbursement of expenses and for payment of salaries of certain officials of cities of the third and fourth classes. The legislative act became effective June 11, 1941.

Following the passage of that act, the city of Ritzville, through its council, enacted ordinance No. 355, which provided that the mayor and councilmen should each be paid the sum of five dollars for each council meeting attended by him not in excess of two such meetings a month. Pursuant to that ordinance, the mayor and councilmen were each paid the prescribed amount for their services rendered during the month of July, and it is alleged that unless otherwise prohibited they will continue to be paid such amount.

This action was brought by two resident taxpayers of Ritzville to restrain the issuance or payment of any warrants for compensation provided by the above mentioned ordinance. Upon a hearing by the court, a judgment was entered peremptorily prohibiting the further issuance or payment of any such warrants.

From that judgment, the city of Ritzville and its officers have appealed.

The only question presented upon the appeal is whether the legislative act and the ordinance referred to above, in so far as they may be said to permit the payment of salaries to persons holding office under a then existing term, are in conflict with Art. II, § 25, and Art. XI, § 8, of the Washington constitution.

Section 1 of chapter 115, p. 295, Laws of 1941, amending § 7 of chapter 184, Laws of 1915 (Rem. Rev. Stat., § 9120 [P. C. § 790]), reads as follows:

"The Mayor and the members of the City Council may be reimbursed for actual expenses incurred in the discharge of their official duties upon presentation of a claim therefor, after allowance and approval thereof by resolution of the City Council; and each City Councilman may be paid for attending council meetings an amount not exceeding five dollars ($5.00) per meeting and for not more than two (2) council meetings each month, as the City Council may fix by ordinance. The Treasurer, Clerk, City Attorney and Health Officer shall severally receive, at stated times, a compensation, to be fixed by ordinance by the City Council, which compensation shall not be increased or diminished after their election, or during their several terms of office. *Nothing herein contained shall be construed to prevent the City Council from fixing such several amounts of compensation, in the first instance, during the term of office of any such officer or after his election.* The Mayor and other officers shall receive such compensation as may be fixed by the City Council at the time the estimates are made as provided by law."

We have italicized that portion of the act upon which appellants especially rely as permitting the payment of salary compensation to them during their present terms of office.

Article II, § 25, of the constitution provides:

"The legislature shall never grant any extra compensation to any public officer, agent, servant, or con-

tractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

Article XI, § 8, reads, in part, as follows:

". . . The salary of any county, city, town, or municipal officer shall not be increased or diminished after his election or during his term of office, . . ."

If the statute or the ordinance here in question had specifically provided that fixed compensations then attaching to certain municipal offices might be increased and paid to incumbent officers during their then existing terms, there could be no doubt that such enactments, whether formulated by the legislature or by the city council, would be unconstitutional and void.

Appellants contend, however, that the inhibitions of the constitution do not apply to situations where, as here, no compensation formerly attached to the office, and where *"in the first instance"* provision is made for compensation during the term of the particular office. The argument may be plausible but, in our opinion, it is unsound. It is as much in violation of the spirit and purpose of the constitution to permit payment of compensation to an officer during his term of office, where previously the office carried no compensation, as it is to permit the amount of compensation, previously fixed, to be increased and such increase of compensation paid to one who, at the time of the increase, is holding office under an unexpired term. This view was fully expounded in *State ex rel. Port of Seattle v. Wardall,* 107 Wash. 606, 183 Pac. 67, where the question involved was in principle the same as that involved here, and where the same contentions in support of the legislative act were made as are now advanced by the appellants herein.

In that case, the legislative act then under consideration provided that port commissioners should serve without compensation, except that in port districts having a population of two hundred thousand or more inhabitants they should receive a compensation of three thousand dollars per annum, provided that at an election previously held within the port district the majority of those voting on the proposition of compensation should have voted in favor of its allowance. At an election held November 5, 1918, the voters approved the allowance of compensation to the port commissioners. At the time of that election, three port commissioners were holding office under an unexpired term and were serving without compensation. The commissioners thereafter directed the county auditor to draw warrants in their favor in payment of salaries allowed by the act. The auditor, conceiving the act inoperative as to the port commissioners in office, refused to comply with the order, whereupon the commissioners instituted in the superior court a mandamus action to compel him to do so. On the hearing, the trial court granted a writ of mandate, and the auditor appealed.

In its opinion reversing the order of the superior court, this court stated that the purposes intended by these particular provisions of the constitution were to prevent pernicious activity being brought to bear upon the legislature by office holders and to frustrate any attempt by salary-fixing bodies to reward their friends and punish their enemies by increasing the salaries of those to whom they were favorably disposed and decreasing the salaries of those whose actions did not meet with the approval of such salary-fixing bodies. Emphasizing the prohibitory nature, the recognized purpose, and the self-executing effect of the constitutional provisions, this court said:

"But the purposes of the clauses in question are not doubtful. If they do not have the suggested meaning they are wholly without purpose. Giving them this meaning, it is at once apparent that it is as much a violation of their spirit and purpose to grant a salary where none was before provided, as it is to increase an inadequate salary. In other words, it is as much against the spirit and purpose of the constitution to permit public officers to solicit a salary during their terms where none has been provided, as it is to solicit an increase of a provided salary, since the one is as much a violation of the public policy involved as is the other."

In *State ex rel. Henneford v. Yelle,* 12 Wn. (2d) 434, 121 P. (2d) 948, we again expressed this same view, though in somewhat different formula. We there said:

"*Unless forbidden or restricted by constitution or statute,* the compensation of any officer or employee of the state could be increased or diminished during his term of office or period of employment. It cannot be gainsaid that the legislature may fix the salary of a state officer in the first instance and has the right to change the salary or compensation from time to time *when its application is made to officials whose terms of office commence subsequent to the effective date of the statute.*" (Italics ours.)

This language is equally applicable to situations involving municipal officers and the salaries or compensation allowed them for their official services.

In *State ex rel. Jaspers v. West,* 13 Wn. (2d) 514, 125 P. (2d) 694, the question presented was identical in principle with that involved here. After a thorough review of the authorities, this court held that an act providing for compensation to public utility commissioners could not be applied to those commissioners who were holding office at the time the act became effective.

Appellants cite the case of *State ex rel. Todd v. Yelle,* 7 Wn. (2d) 443, 110 P. (2d) 162, as supporting

their contention. That case is not in point here. The act there in question merely made provision for allowing members of the legislature an amount not exceeding five dollars a day for their actual and necessary expenses for subsistence and lodging while in the service of the state and while absent from their usual places of abode, and it was held that such allowance was constitutionally permissible. The allowance there was not an increased *compensation* to legislators for their services as such, but was simply one for reimbursement of expenses actually incurred by them while engaged in the performance of official duties.

What we have thus far said disposes of all but one of appellants' contentions. They further contend, however, that in any event compensation to councilman Bill Thiel is not within the inhibition of the constitutional provisions, because he came into office on August 10, 1941, after the passage of the statute and after the adoption of the salary ordinance. The contention is without merit. Mr. Thiel was simply serving out the unexpired term of his predecessor, who had been elected to office in December, 1938, long prior to the time of the enactment of the statute. Mr. Thiel's *term of office* was coeval with that of the person whom he succeeded, and the constitutional provisions applied to him with the same effect as they did to his predecessor. The provisions of the constitution forbidding a change in the compensation of any public officer during his term of office refer to the term and not to the individual. *State ex rel. Henneford v. Yelle, supra; State ex rel. Hovey v. Clausen,* 117 Wash. 475, 201 Pac. 770.

If the legislative act be interpreted to mean, as appellants contend, that the city council may "fix the amounts of compensation, in the first instance, during the term of office of any such officer or after his elec-

tion," and thereupon order the payment of such fixed compensation to incumbent officers, then the act is in conflict with the provisions of the constitution above set forth. However, rather than declare the legislative act unconstitutional under any interpretation that may be given to it, we prefer to say, and now hold, simply that it is inoperative as to the appellant officers during their present terms of office. The municipal ordinance has, of course, no greater validity.

The judgment is affirmed.

ROBINSON, C. J., MILLARD, JEFFERS, and MALLERY, JJ., concur.