[No. 34723. *En Banc.* June 30, 1958.]

THE STATE OF WASHINGTON, *on the Relation of Charles O. Carroll, as Prosecuting Attorney for King County, Appellant, v.* ED MUNRO, *Respondent.*[1]

[1] Reported in 327 P. (2d) 729.

*Charles O. Carroll* and *K. G. Smiles,* for appellant.

*Kelley, O'Sullivan & Spiller,* for respondent.

*Heckendorn & McNair, amicus curiae.*

WEAVER, J.—Does the governor have the power and authority, under the constitution and laws of the state of Washington, to fill a vacancy caused by death of an incumbent county commissioner when the two remaining commissioners are unable to agree upon the appointment of a successor to the deceased member?

Is the respondent constitutionally eligible to hold the office of county commissioner by appointment of the governor?

This is an action in *quo warranto* commenced by the prosecuting attorney of King county pursuant to statute. RCW 7.56.010 *et seq*. The information requests the court to declare (1) that Mr. Ed Munro, respondent, unlawfully holds the office of county commissioner of King county and should be excluded from the privileges and emoluments thereof; and (2) that Mr. John J. Lewis is entitled to the office.

The questions presented arise from the following undisputed facts.

William H. Sears was elected county commissioner of King county from the second commissioner district in the general election held November, 1956. His term commenced January 14, 1957, and extended to the second Monday in January, 1961. Mr. Sears died April 7, 1958, thus creating a vacancy on the three-member board of King county commissioners.

April 10, 1958, the county central committee of Mr. Sear's political party submitted the names of three individuals "in accordance with the 32nd amendment to the constitution of the State of Washington," to the two remaining members of the King county board of commissioners, with the request that

"In the event of disagreement by the board on appointment of one of the above named persons, we request the Board to forward this list to the Governor of the State of Washington for his selection and appointment."

April 11, 1958, the two remaining members of the board of county commissioners met. One member moved the appointment of John J. Lewis, one of the nominees designated by the county central committee; the motion failed for want of a second. Upon reference by the commissioners, the governor appointed respondent, who is not a member of the same political party as Mr. Sears, his predecessor in office.

A. *The Power of the Governor to Appoint Mr. Munro*

The county central committee, of the same political party as Mr. Sears, proceeded on the theory that one of its nomi-

nees is entitled to appointment by reason of the procedure set forth in the Washington constitution—Art. II, § 15, as amended by the thirty-second amendment, which states:

"[a] Such vacancies as may occur in either house of the legislature or *in any partisan county elective office* shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs: [b] *Provided,* That the person appointed to fill the vacancy must be from the same legislative district and the same political party as the *legislator whose office has been vacated,* and shall be one of three persons who shall be nominated by the county central committee of that party, and the person so appointed shall hold office until his successor is elected at the next general election, and shall have qualified: [c] *Provided,* That in case of a vacancy occurring in the office of joint senator or joint representative, the vacancy shall be filled from a list of three nominees selected by the state central committee, by appointment by the joint action of the boards of county commissioners of the counties composing the joint senatorial or joint representative district, the person appointed to fill the vacancy must be from the same legislative district and of the same political party as the *legislator* whose office has been vacated, and in case a majority of said county commissioners do not agree upon the appointment within sixty days after the vacancy occurs, the governor shall within thirty days thereafter, and from the list of nominees provided for herein, appoint a person who shall be from the same legislative district and of the same political party as the *legislator whose office has been vacated.*" (Italics ours.) (Sections lettered by us for reference.)

We agree with respondent that the thirty-second amendment, *supra,* does not apply to the factual situation of the instant case. The governor did not purport to act under it.

In so far as the independent clause (designated "a", *supra*) provides that vacancies in partisan county elective offices shall be filled by appointment by the board of county commissioners, it adds nothing to the powers of the commissioners that is not contained in Art. XI, § 6, *infra,* of the state constitution. The subject matter of the two provisos (designated "b" and "c", *supra*) of the amendment is not

as broad as the subject matter of the independent clause. The provisos apply only to vacancies in the office of state *legislators* (senators and representatives). They delineate that the individual appointed to fill a vacancy in these legislative offices must be of the same political party as the *legislator* whose office has been vacated and shall be one of three persons nominated by the county central committee of that party. If a majority of the county commissioners does not agree on the appointment within sixty days, then the governor may make the appointment, in accordance with the terms of the amendment, from the list of nominees provided.

Although, in a restricted sense, a county commissioner might be designated a "legislator," such designation is not the generally accepted one used in the parlance of political science in this jurisdiction. The term "legislator" is certainly not descriptive of the office of county prosecutor, clerk, auditor, or treasurer, who also hold "partisan county elective" offices. In addition, none of them is elected from a "legislative district" (commissioners are nominated from county commissioner districts) unless the entire county is considered as such, a conclusion we cannot reach for it would change the clear and unambiguous meaning of the two provisos.

Although not necessarily controlling, we note that the thirty-second amendment was submitted to the people under the ballot title "Filling vacancies in state legislature." Since the independent clause of the amendment (designated "a", *supra*) only restates, in general, the provisions of Art. XI, §.6, *infra*, the ballot title was appropriate.

We conclude that Art. II, § 15, as amended by the thirty-second amendment of the constitution, has no application to the facts of the instant case; hence, Mr. John J. Lewis has neither claim nor right to the office of county commissioner of King county.

Washington constitution—Art. XI, § 6, provides:

"The board of county commissioners in each county shall fill all vacancies occurring in any county, township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next

general election, and until their successors are elected and qualified." (See RCW 36.16.110, which is the statutory counterpart of this section of the constitution.)

This is an original provision of our constitution adopted in 1889. The following cases illustrate the application of this constitutional provision to statutes passed *prior* to the *adoption of the constitution.*

(1) The problem was first presented in *State ex rel. Moody v. Cronin,* 5 Wash. 398, 31 Pac. 864 (1892). At that time, the statute (Code of 1881, § 1696; 1 Hill's Code, § 308 (1891)), provided that vacancies in the office of justice of the peace should be filled by *election.* This court held that Art. XI, § 6, of the constitution was "certainly self-executing and must prevail"; hence, *the statute was superseded* and the vacancy was correctly filled by appointment by the board of county commissioners in accordance with the provisions of the constitution.

(2) *State ex rel. McMartin v. Whitney,* 9 Wash. 377, 37 Pac. 473 (1894). A vacancy occurred in the office of prosecuting attorney of Snohomish county. May 9, 1893, the board of county commissioners appointed respondent to the office. On the same day, the governor appointed appellant. The governor purported to make the appointment under the authority of Laws of 1885, § 15, p. 62. This court sustained respondent's right to the office, because Art. XI, § 6, of the state constitution *superseded* the governor's statutory authority to appoint.

We find that the *rationale* of the *Moody* and *McMartin* cases was followed when a conflict developed between Art. XI, § 6, of the state constitution and a statute passed by the legislature *after* the adoption of the constitution.

The 1893 legislature passed Laws of 1893, chapter 29, p. 44, § 1. It provided:

"Whenever a vacancy occurs in a board of county commissioners . . . then at the first regular meeting of the board of county commissioners thereafter, the remaining county commissioners *and the judge of the superior court of the county* shall appoint some qualified elector to fill the vacancy: . . ." (Italics ours.)

This section appears as 1 Ballinger's Code, § 327, published in 1897. It is of interest to note that the codifier stated:

"This section would seem to be in conflict with Art. XI., § 6, of the Const., as requiring the judge of the superior court to act in such cases."

The codifier's comment was prophetic. The identical question was presented in *State ex rel. Pendergast v. Fulton*, 37 Wash. 271, 79 Pac. 779 (1905).

A vacancy occurred in the office of county commissioner of Okanogan county. The two remaining members appointed respondent to fill the vacancy without notice to or consultation with the judge of the superior court of Okanogan county. *Quaere*: Was the appointment null and void because it was not made pursuant to the statute?

The appointment was valid. The statute that purported to delegate appointive powers to the judge of the superior court was held unconstitutional, because it was in conflict with Art. XI, § 6, of the constitution. The court said:

"Respondent contends that the requirement of Bal. Code, § 327, whereby it is provided that the judge of the superior court shall act with the county commissioners, in appointing a person to fill a vacancy on the board of county commissioners, is in violation of said § 6, art. 11, and, therefore, unconstitutional and void. We think this contention is correct, and should be sustained. There is no question but that a commissioner is a county officer, and that under the provision of said § 6, art. 11, the remaining members of the board of county commissioners *have full authority* to appoint a suitable person to fill any vacancy on the board, and that such authority is also granted by Bal. Code, § 346, above mentioned. *State ex rel. McMartin v. Whitney*, 9 Wash. 377, 37 Pac. 473."

The *Pendergast* case, *supra*, has never been overruled; it is still the law of this jurisdiction.

This brings us to the facts of the instant case. If respondent's appointment to the board of county commissioners is valid, its validity must depend upon a statute not in conflict with Art. XI, § 6, of the constitution that authorizes the governor to appoint him.

Laws of 1933, chapter 100, § 1 (c), p. 416 [*cf.* RCW 36.32.070 (3)] provides:

"*(3)* [(c)] Whenever there [shall be] *is* one [(1)] vacancy in the office of county commissioner [of any county in the state], the two remaining commissioners shall [appoint to] fill the vacancy: [*Provided,* That should] *If* the two [(2)] commissioners fail to agree upon a selection after the expiration of five [(5)] days from the day the vacancy occurred, [then] the governor shall appoint the *third* [remaining] commissioner." (Bracketed words appear in the original act but are omitted from RCW 36.32-.070. Italicized words are supplied by the codifier.)

█ Art. XI, § 6, of the constitution, quoted *supra*, is clear and unambiguous. It requires no interpretation. The "board of county commissioners" means a *legally constituted board.* Since territorial days, the board of commissioners of each county is, by statute, composed of "three qualified electors" and

" . . . two of said board of commissioners *shall constitute* a quorum to do business." RCW 36.32.010 [*cf.* Code of 1881, § 2663].

Thus, a board of county commissioners with *one* vacancy is a legally constituted body capable of carrying out its legal duties with full constitutional authority, by reason of Art. XI, § 6, to appoint a qualified person to fill a vacancy on the board.

There is no cessation of county government. If the legally constituted board fails to carry out its constitutional duty, it may create a *political* hiatus (as distinguished from a *legal* one) for which the two members may be answerable to their constituents; but it does not create a situation in which the legislature may delegate to the governor a duty that the constitution requires must be performed by the board of county commissioners.

Respondent tergiversates from the facts of the instant case—*one* vacancy on the board of county commissioners—to an assumed situation where there are *two* vacancies or even *three* vacancies. He cites Laws of 1933, chapter 100, § 1 (a) (b) [*cf.* RCW 36.32.070 (1) (2)] which provides:

"Whenever there *is* [shall be] a vacancy [or vacancies] in the board of county commissioners [of any county], *it* [the said vacancies] shall be filled as follows:

"(*1*) [a] If there *are* [shall occur] three [(3)] vacancies, the governor of the state shall appoint two [(2)] of the [said] officers. The two [(2)] commissioners thus appointed shall then meet and select the third [(3rd) and remaining] commissioner. If the [said] two [(2)] appointed commissioners fail to agree upon selection of the third [(3rd)] after the expiration of five [(5)] days from the day *they* [the officials] were appointed, [then] the governor shall appoint the remaining commissioner.

"(*2*) [b] Whenever there *are* [shall be] two [(2)] vacancies in the office of county commissioner, the governor shall [then] appoint one [(1)] commissioner, and the two [(2)] commissioners then in office shall appoint the [remaining or] third [(3rd)] commissioner. [*Provided,* That] If they fail to agree upon a selection after *the* expiration of five [(5)] days from the day of [appointment,] *the governor's appointment,* [then] the governor shall appoint the third [(3rd)] commissioner." (Bracketed words appear in the original act, but are omitted in RCW 36.32.070 (1) (2). Italicized words are supplied by the codifier.)

Respondent then cites two decisions of this court, both decided prior to the 1933 statute, quoted *supra* [*cf.* 36.32-.070 (1) (2)].

1. *Farquharson v. Yeargin,* 24 Wash. 549, 64 Pac. 717 (1901). Laws of 1899, chapter 18, p. 26, provided for the creation and organization of Ferry county, formerly a part of Stevens county. Section 5 of the act authorized the governor to appoint three county commissioners. The court held that the provisional power to fill county offices in new counties was a necessary incident of the legislative power to create new counties, and that the exercise of such power was not in contravention of the constitution.

2. *State ex rel. Gilbert v. Dimmick,* 89 Wash. 182, 154 Pac. 163 (1916). All three county commissioners of Yakima county were removed from office as the result of a recall election. The governor appointed two commissioners, who, in turn, appointed the third.

Rem. & Bal. Code, § 8988, relating to the general powers and duties of the governor, provided that the governor

should "see that all offices are filled, and the duties thereof performed." This court sustained the validity of the governor's appointment of the two commissioners, saying:

"The county commissioners of a county are the business agents of the county, and the ordinary business of a county cannot be conducted without their authorization. It follows that when *all* the offices of county commissioners in a county become vacant, there is necessarily a cessation of county government, and there must be some power lodged somewhere to prevent such hiatus. This has been done by the legislature. . . . Where there is no provision in the constitution for the appointment of commissioners of a county, and *where a majority of the offices of the board of county commissioners become vacant,* then it is within the power of the governor to fill such vacancy by appointment." (Italics ours.)

It is apparent that the *Farquharson* and *Gilbert* cases, *supra,* are not apposite; however, based upon them and by reason of RCW 36.32.070 (1) (2), quoted *supra,* respondent concludes that RCW 36.32.070 (3), quoted *supra,* is sufficient to authorize the appointment of Mr. Munro.

■ This conclusion is a *non sequitur.* Assuming *arguendo* that the governor has the power to fill vacancies on a three-member board of county commissioners when there are two or three vacancies existing (a question which is not before us and which we do not decide), it does not follow that he has this power when there is only *one* vacancy, in view of Art. XI, § 6. The distinction is not based upon a difference of degree; it depends upon the existence or non-existence of a quorum of the legally constituted board of county commissioners having full authority to make appointments. King county has such a board. If the legislature does not have the right to deprive the board of a portion of its appointive power and delegate it to a judge of the superior court (*State ex rel. Pendergast v. Fulton, supra*), it does not have the right to delegate this authority to the governor; hence, Laws of 1933, chapter 100, § 1 (c) (RCW 36.32.070 (3)), being in conflict with Art. XI, § 6, of the constitution, is unconstitutional.

The governor's appointment of Mr. Munro to the board of commissioners of King county is null and void.

B. *Eligibility of Mr. Munro to Hold the Office.*

We turn to the second question presented by this appeal—is Mr. Munro eligible to hold the office of county commissioner of King county?

The thirty-fifth state legislature increased the salary of King county commissioners from eight thousand six hundred dollars per annum to twelve thousand dollars. RCW 36.17.020. This act became effective June 12, 1957. The salary increase is only applicable to officials whose terms of office *commence* subsequent to the effective date of the statute. *State ex rel. Henneford v. Yelle,* 12 Wn. (2d) 434, 121 P. (2d) 948 (1942); hence, Mr. Sears, having taken office as county commissioner on January 14, 1957, for a four-year term, could not receive the increased emolument during his term of office. Washington constitution—Art. II, § 25; Art. XI, § 8. Mr. Munro, as the purported appointive successor of Mr. Sears, is receiving compensation at the rate of eight thousand six hundred dollars per annum, because one appointed to fill a vacancy of an unexpired term cannot receive a salary increase if his predecessor was not entitled to it. *State ex rel. Wyrick v. Ritzville,* 16 Wn. (2d) 36, 132 P. (2d) 737, 144 A. L. R. 681 (1942), and cases cited.

Mr. Munro was a member of the thirty-fifth legislature that increased the salary of the office of King county commissioner. His term as legislator extends to January, 1959.

Art. II, § 13, of the state constitution, provides:

"No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

In *State ex rel. Wyrick v. Ritzville, supra,* this court said:

"The provisions of the constitution forbidding a change in the compensation of any public officer during his term of office *refer to the term and not to the individual. State ex rel. Henneford v. Yelle, supra* [12 Wn. (2d) 434, 121 P. (2d)

948]; *State ex rel. Hovey v. Clausen,* 117 Wash. 475, 201 Pac. 770." (Italics ours.) (p. 42)

In principle, the case of *State ex rel. Pennick v. Hall,* 26 Wn. (2d) 172, 173 P. (2d) 153 (1946) (*En Banc*), presents the same question as the instant case. There is but one factual difference: In the *Pennick* case, the legislator attempted *to be elected* to "a civil office" during her term as legislator; in the instant case, the legislator *has been appointed* to an office during his term as legislator—the emoluments of which were increased by the legislature in which he served. Both situations are included in the prohibition of Art. II, § 13, quoted *supra.*

Blanche Pennick was a member of the twenty-ninth session of the legislature that increased the annual salary of county officers. The statute became effective June 6, 1945; her term as legislator expired the second Monday of January, 1947. July 9, 1946, she was the successful nominee of her political party for the office of auditor of Grays Harbor county.

Because of Art. II, § 13, of the constitution, quoted *supra,* this court affirmed the decision of the trial court prohibiting the county election board from certifying her name on the official ballot, saying:

"It is prerequisite to eligibility for election in the sense of becoming a candidate and participating in the election process that a candidate be, at that time, eligible to hold the office." (p. 177)

*A fortiori,* if a legislator, during his term of office, is not eligible to become a *candidate* for an office, the emoluments of which were increased by the legislature of which he was a member, the legislator is not eligible for *appointment* to the office.

Respondent can find no solace in *State ex rel. Todd v. Reeves,* 196 Wash. 145, 82 P. (2d) 173, 118 A. L. R. 177 (1938) (*En Banc*). The signers of this opinion are agreed that the *Todd* case does not control the instant one, but for different reasons: some because the case is distinguishable;

some because it has been overruled *sub silentio*; others because it should be overruled.

The facts were these:

The 1937 legislature, of which Senator George F. McAulay was a member, created a retirement system for the judiciary. Senator McAulay filed his declaration of candidacy for the office of judge of the supreme court. This court denied a writ prohibiting the secretary of state from certifying his name for inclusion on the ballot.

The writer is of the opinion that the *Todd* case is distinguishable, although he recognizes the cogency of the arguments that it has been overruled *sub silentio* or that it should be expressly overruled.

The *Todd* decision is narrower in scope than respondent contends. The court said:

"Our inquiry will be *limited* to the question whether there is any increase in the emoluments of the office effective during the six-year term for which the respondent McAulay has filed his declaration." (Italics ours.) (p. 148)

The court concluded:

"While the provision for retirement makes the office more attractive, the fact remains that no emolument, within the meaning of § 13, Art. 2, *supra*, could attach during respondent McAulay's first six-year term." (p. 150)

Three members of the court who signed the majority opinion in the *Todd* case in 1938 signed the majority opinion in the *Pennick* case in 1946, which notes that the *Todd* case only dealt with the definition of the word "emolument" as used in the state constitution.

We conclude, in the circumstances of the instant case, that Mr. Munro is not eligible to hold the office of commissioner of King county.

For the foregoing reasons, the judgment is reversed and the case remanded, with instructions to enter judgment for appellant consistent with this opinion.

Because of the emergent nature of the facts disclosed, the clerk of this court is instructed to transmit the remittitur forthwith.

It is so ordered.

HILL, C. J., and FOSTER, J., concur.

OTT, J. (concurring in part and dissenting in part)—I concur with the conclusion of the majority that amendment 32 of the state constitution does not apply to the county elective office here in question, and, further, that Laws of 1933, chapter 100, § 1, p. 415 [cf. RCW 36.32.070], precludes the governor from appointing a county commissioner, under the facts of the instant case. Further, I concur in the conclusion of the majority that the appointment to fill the vacancy, under the facts here presented, can only be made by the board of county commissioners (Art. XI, § 6, state constitution), and that two members of the board of county commissioners constitute a quorum sufficient to carry on the business of the county. RCW 36.32.010 [cf. Rem. Rev. Stat., § 4036].

I dissent to that portion of the majority opinion which holds that Mr. Munro is *not eligible* for the office by virtue of Art. II, § 13, of the constitution. The unexpired term of Commissioner Sears, deceased, does not carry with it the increased emoluments which the constitution forbids Mr. Munro to receive. He will not receive the increased emoluments unless he is re-elected for the term commencing in 1961. By authority of our previous decisions of *State ex rel. Todd v. Reeves,* 196 Wash. 145, 82 P. (2d) 173, 118 A. L. R. 177 (1938), and *State ex rel. Pennick v. Hall,* 26 Wn. (2d) 172, 173 P. (2d) 153 (1946), Mr. Munro is eligible to hold the office.

MALLERY, J., concurs with OTT, J.

ROSELLINI, J. (concurring in part and dissenting in part) —I concur with the majority that the provisos of amendment 32 of the state constitution apply only to the vacancies in the offices of state legislators and not to any other partisan county elective office.

However, I cannot agree with the majority that chapter 100, § 1, Laws of 1933, p. 415, is in conflict with Art. XI, § 6, of the state constitution, and that the governor has no power to appoint a county commissioner under this statute, which provides:

"Whenever there shall be a vacancy or vacancies in the board of county commissioners of any county, the said vacancies shall be filled as follows:

"(a) If there shall occur three (3) vacancies, the governor of the state shall appoint two (2) of the said officers. The two (2) commissioners thus appointed shall then meet and select the third (3rd) and remaining commissioner. If the said two (2) appointed commissioners fail to agree upon selection of the third (3rd) after the expiration of five (5) days from the day the officials were appointed, then the governor shall appoint the remaining commissioner.

"(b) Whenever there shall be two (2) vacancies in the office of county commissioner, the governor shall then appoint one (1) commissioner, and the two (2) commissioners then in office shall appoint the remaining or third (3rd) commissioner: *Provided*, That if they fail to agree upon a selection after expiration of five (5) days from the day of appointment, then the governor shall appoint the third (3rd) commissioner.

"(c) Whenever there shall be one (1) vacancy in the office of county commissioner of any county in the state, the two remaining commissioners shall appoint to fill the vacancy: *Provided*, That should the two (2) commissioners fail to agree upon a selection after the expiration of five (5) days from the day the vacancy occurred, then the governor shall appoint the remaining commissioner." [*cf.* RCW 36.32.070.]

The fundamental principles which guide the court in its approach to any case involving an attack upon the constitutionality of a statute are: that the state constitution is not a grant, but a restriction of the law-making power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state or Federal constitution. Where the validity of a statute is assailed, there is a presumption of the constitutionality of the legislative enactment, unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt. *Port of Tacoma v. Parosa, ante* p. 181, 324 P. (2d) 438, and cases cited therein.

Where a statute is open to two constructions, one of which will render it constitutional and the other unconstitutional,

it should be given an interpretation rendering it valid. This fundamental principle has been repeatedly applied by this court. *State ex rel. Campbell v. Case,* 182 Wash. 334, 47 P. (2d) 24; and *Casco Co. v. Public Utility Dist. No. 1,* 37 Wn. (2d) 777, 226 P. (2d) 235.

In 1901, it was held, in *Farquharson v. Yeargin,* 24 Wash. 549, 64 Pac. 717, that Laws of 1899, p. 26, providing that the governor should appoint three commissioners for Ferry county, which was created and organized under that act, that this provision did not contravene that provision of the constitution which required that all county officers should be elected by the people. Provisions of this sort, said the court, do not apply to cases of emergency, such as the creating of the usual county offices, on the organization of a new county, the power to fill county offices provisionally in new counties being a necessary incident of the legislative power to create new counties.

In another emergency situation, where all three of the county commissioners had been recalled, and, under legislative authorization, the governor appointed two commissioners who in turn appointed a third, this court held that Art. XI, § 6, had no application, since this contingency was not contemplated by the framers, and, it being necessary to prevent an entire cessation of county government through the vacancy of all the offices of the county commissioners, the power was necessarily lodged in the legislature to provide for the filling of these vacancies. *State ex rel. Gilbert v. Dimmick,* 89 Wash. 182, 154 Pac. 163. Referring to the holding in *Farquharson v. Yeargin, supra,* the court reaffirmed that the legislature has power to authorize the governor to fill vacancies in the office of the county commissioner, where an emergency arises which was not provided for in the constitution.

In both of those cases, all of the offices of county commissioners were vacant, and there was clearly nothing that could be done under Art. XI, § 6, providing for the filling of vacancies by action of the board, since the board in each case was non-existent.

As we said in *State ex rel. Gilbert v. Dimmick, supra:*

"The county commissioners of a county are the business agents of the county, and the ordinary business of a county cannot be conducted without their authorization. It follows that when all the offices of county commissioners in a county become vacant, there is necessarily a cessation of county government, and there must be some power lodged somewhere to prevent such hiatus. This has been done by the legislature."

The question is whether, when there is only one vacancy on a board, and the two remaining commissioners fail to agree on an appointment, there results a similar emergency for which no provision is made in the constitution. I think that it does, for, although a complete cessation of county business need not follow, it *may* do so if the two remaining commissioners are unable to agree on any matter which comes before them. They have no duty to agree, nor is it easy to imagine, if such a duty existed, how it could ever be enforced. RCW 36.32.130 provides that, when only two members are present at a meeting of the board and a division on any question takes place, the matter under consideration shall be postponed to the next subsequent meeting. It is plain, that if the board is composed of only two members, such postponement could reoccur indefinitely, with the result that the proper conduct of the business affairs of the county would be seriously hampered if not halted altogether. At the same time, there would be no breach of duty involved on the part of either commissioner.

It is insisted, however, that this court has held a similar provision unconstitutional in *State ex rel. Pendergast v. Fulton*, 37 Wash. 271, 79 Pac. 779. In that case, the legislature had provided that where a vacancy occurred on the board of commissioners, a judge of the superior court should act with the remaining commissioners in appointing an individual to fill the vacancy. Such a vacancy had occurred on the board of commissioners for Okanogan county, and the remaining commissioners, ignoring the statutory provision, had agreed upon an appointment and had proceeded to fill the vacancy. The action in *quo warranto* was

brought to oust the appointee, the contention being that the commissioners could not act without the concurrence of the superior judge. It was held that the appointment was valid, the court saying:

"There is no question but that a commissioner is a county officer, and that under the provision of said § 6, art. 11, the remaining members of the board of county commissioners have full authority to appoint a suitable person to fill any vacancy on the board, and that such authority is also granted by Bal. Code, § 346, above mentioned [providing that, when a vacancy occurred in any county office, the commissioners should appoint a suitable elector of the proper county to fill such vacancy]. *State ex rel. McMartin v. Whitney,* 9 Wash. 377, 37 Pac. 473."

In other words, the holding of the court was that the commissioners acted within their authority in making the appointment and that the judge was not a necessary party to the proceedings. The question before the court in the present case did not arise and was not considered, since the remaining commissioners did agree on an appointment. Had they failed to agree, as the King county commissioners did in this case, an entirely different question would have been presented.

Reliance is also placed upon *State ex rel. Parks v. Tucei,* 175 Miss. 218, 166 So. 370. In that case, a city councilman's term expired two days after his resignation. Three city officers (the mayor and two councilmen) remained, who were authorized to transact municipal affairs. It was held that there was not such an emergency as would justify an appointment by the governor on the failure of the remaining city officers to name a successor. The decision was correct on the facts. Only one working day remained before the newly elected councilman was to take office, and since there were three officers capable of acting in the interim, no deadlock was likely. Clearly, no emergency existed. But the facts are entirely different from those presented in this case, and the holding has no application here.

It seems plain that the people, in adopting Art. XI, § 6, had in mind that appointments should be made by a full

board, at least where a failure of agreement on the part of those constituting a quorum results in a stalemate, as it necessarily does where two constitute a quorum, and that no provision was made for reconstituting the board, where one of its offices is vacant and the remaining commissioners are unable to agree on the choice of a third. This being the case, and a board composed of three members being necessary for the efficient transaction of county business, the legislature was empowered to provide for this contingency, and the statute making such provision does not contravene Art. XI, § 6, of the constitution.

█ I disagree with the majority that the respondent is wrongfully holding the office of county commissioner, namely, that he is ineligible by virtue of the provisions of Art. II, § 13, which reads:

"No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

Provisions of this sort should be narrowly construed in favor of eligibility. *State ex rel. Johnson v. Nye*, 148 Wis. 659, 135 N. W. 126; *State ex rel. Hawthorne v. Wiseheart*, 158 Fla. 267, 28 So. (2d) 589. Eligibility to an office in the state is to be presumed rather than to be denied, and any doubt as to the eligibility of any person to hold an office must be resolved against the doubt. *State ex rel. Weston v. Schragg*, 158 Wash. 74, 291 Pac. 321.

It is the position of the appellant that Art. II, § 13, is clear and unambiguous, that it means that a legislator may not hold an office during his legislative term if the emoluments of that office were increased during his term, regardless of when the increase becomes effective. However, this provision was not intended to prevent the holding of such an office by a legislator if the increase in emoluments cannot possibly apply to him during the term for which he is elected. The purpose which provisions of this kind are meant to serve, is ably expressed by Story, in his work on the Constitution of the United States, § 867, as follows:

"The reasons for excluding persons from offices who have been concerned in creating them, or increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness."

If this was the purpose of the framers, it is reasonable to assume that the provision was meant to apply where the legislator, by appointment or election to the newly created or enhanced office, will enjoy the benefits of the legislative action. This would mean, of course, that he could never be qualified to hold a newly created office during his term, but it does not mean that he is unqualified to serve in a pre-existing office where he cannot possibly enjoy the increased emoluments during the term for which he is elected or appointed. The provision was interpreted thus in *State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P. (2d) 173, 118 A. L. R. 177, wherein we held that a legislator was eligible to be elected judge of the supreme court, during his term as legislator, even though the legislature of which he was a member had enacted a law providing for retirement pay for judges, since he would not be eligible for such pay during or at the end of his first term. The question in the case, said the court, was "whether there is any increase in the emoluments of the office *effective* during the six-year term for which the respondent McAulay has filed his declaration." (Italics mine.)

The appellant attempts to distinguish this case, maintaining that it was decided on the sole question of whether retirement pay constitutes an emolument, but the very quotation on which it relies to demonstrate this contention belies it:

"While the provision for retirement makes the office more attractive, the fact remains that no emolument, within the meaning of Sec. 13, Art. 2, *supra, could attach during respondent McAulay's first six-year term.*" (Italics mine.)

The case is controlling of the question presented here.

I do not agree with the position of the appellant that the case should be overruled. The provision is not free from ambiguity when it is considered that it was designed to

afford some assurance that legislators, in voting on matters of this sort, would not be influenced by their own aspirations to the office in question, and that no aspiration of this kind can be served where the increased emolument will not be available to the legislator during the term for which he is elected or appointed. Significantly, the prohibition applies only during the legislator's term in the legislature. If, as soon as his legislative term expires, he may aspire to the new office, or the office the emoluments of which have been increased, it must follow that the people had in mind only that he be ineligible to enjoy the fruits of his legislative endeavors during his term in the legislature. This being the case, an increase in emoluments which cannot be received by the legislator during the term of office for which he is appointed or elected, does not disqualify him from holding that office.

In *State ex rel. Pennick v. Hall*, 26 Wn. (2d) 172, 173 P. (2d) 153, it was held that under Art. II, § 13, a legislator was ineligible to become a candidate for an office, the emoluments of which had been increased during her term in the legislature, even though her term in the new office would not begin until the expiration of her legislative term. In that case, there was no question but that the increase in emoluments would be receivable by the legislator, and the only issue before the court was whether her eligibility should be determined as of the time she filed her candidacy or as of the time she took office. The case is therefore not in point.

Thus the law, as announced prior to the majority's interpretation, was that the respondent is eligible to hold the office of county commissioner and is eligible to be a candidate for election for the unexpired term of the deceased commissioner.

The majority's conclusion to the contrary is based upon the assumption that no cessation of county government can occur where a board is composed of only two members. The legislature has recognized in RCW 36.32.130, *supra*, that a cessation of county government can occur.

Furthermore,·the majority has failed, or refused, to apply the long-established rules of constitutional and statutory interpretation set forth in *Port of Tacoma v. Parosa, State ex rel. Campbell v. Case*, and *Casco Co. v. Public Utility Dist. No. 1, supra.*

The judgment denying the writ should be affirmed.

DONWORTH, FINLEY, and HUNTER, JJ., concur with ROSELLINI, J.

