[No. 38846.  En Banc.  September 1, 1966.]

THE STATE OF WASHINGTON, *on the Relation of James Munro, Respondent,* v. JAMES TODD, *Appellant.*[*]

[*]Reported in 417 P.2d 955.

*Curtis H. Coons,* for appellant.

*The Attorney General, Robert J. Doran, Chief Assistant,* and *James Munro,* for respondent.

HAMILTON, J.—This is an action in quo warranto to test the effectiveness of the gubernatorial appointment of a county commissioner.

Briefly, the salient and stipulated facts are: A duly elected county commissioner of Kitsap County died, thereby creating a vacancy on that board of county commissioners. The remaining county commissioners, being of different political faiths, were unable to agree upon and appoint a successor. The Governor, acting under the provisions of RCW 36.32.070(3),[1] in due course filled the vacancy by appointing respondent. Relator (respondent here) as Prosecuting Attorney of Kitsap County, brought this action to determine the validity of the appointment. The superior court, acting upon the authority of our decision in *State ex rel. Carroll v. Munro,* 52 Wn.2d 522, 327 P.2d 729 (1958), held the appointment ineffectual and declared the office vacant. Respondent (appellant here) has appealed.

The appeal confronts us with a query identical to that posed in *State ex rel. Carroll v. Munro, supra.* The question is:

Does the governor have the power and authority, under the constitution and laws of the state of Washington, to fill a vacancy caused by death of an incumbent county commissioner when the two remaining commissioners are unable to agree upon the appointment of a successor to the deceased member? *State ex rel. Carroll v. Munro, supra,* at 523.

---

[1]"Whenever there is a vacancy in the board of county commissioners, it shall be filled as follows:

". . . .

"(3) Whenever there is one vacancy in the office of county commissioner, the two remaining commissioners shall fill the vacancy. If the two commissioners fail to agree upon a selection after the expiration of five days from the day the vacancy occurred, the governor shall appoint the third commissioner." RCW 36.32.070(3).

■ In the cited case, we held, after reviewing the applicable constitutional, statutory, and decisional background, that the statutory antecedent[2] of the present RCW 36.32-.070(3) was unconstitutional, because the particular appointing power vested in a legally constituted board of county commissioners by Const. art. 11, § 6,[3] could not be legislatively dislodged and consigned to the Governor. We did not then—nor do we now—pass upon the validity of RCW 36.32.070(1) and (2).[4] In so holding we said, at 529 and 531:

Art. XI, § 6, of the constitution, quoted *supra*, is clear and unambiguous. It requires no interpretation. The "board of county commissioners" means a *legally constituted board*. Since territorial days, the board of commissioners of each county is, by statute, composed of "three qualified electors" and

[2]"Whenever there shall be a vacancy or vacancies in the board of county commissioners of any county, the said vacancies shall be filled as follows:

" . . . .

"(c) Whenever there shall be one (1) vacancy in the office of county commissioner of any county in the state, the two remaining commissioners shall appoint to fill the vacancy: *Provided,* That should the two (2) commissioners fail to agree upon a selection after the expiration of five (5) days from the day the vacancy occurred, then the governor shall appoint the remaining commissioner." Laws of 1933, ch. 100, § 1(c).

[3]"The board of county commissioners in each county shall fill all vacancies occurring in any county, township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next general election, and until their successors are elected and qualified." Const. art. 11, § 6.

[4]"Whenever there is a vacancy in the board of county commissioners, it shall be filled as follows:

"(1) If there are three vacancies, the governor of the state shall appoint two of the officers. The two commissioners thus appointed shall then meet and select the third commissioner. If the two appointed commissioners fail to agree upon selection of the third after the expiration of five days from the day they were appointed, the governor shall appoint the remaining commissioner.

"(2) Whenever there are two vacancies in the office of county commissioner, the governor shall appoint one commissioner, and the two commissioners then in office shall appoint the third commissioner. If they fail to agree upon a selection after the expiration of five days from the day of the governor's appointment, the governor shall appoint the third commissioner. RCW 36.32.070(1) and (2).

" . . . two of said board of commissioners *shall constitute* a quorum to do business." RCW 36.32.010 [*cf.* Code of 1881, § 2663].

Thus, a board of county comissioners with *one* vacancy is a legally constituted body capable of carrying out its legal duties with full constitutional authority, by reason of Art. XI, § 6, to appoint a qualified person to fill a vacancy on the board.

There is no cessation of county government. If the legally constituted board fails to carry out its constitutional duty, it may create a *political* hiatus (as distinguished from a *legal* one) for which the two members may be answerable to their constituents; but it does not create a situation in which the legislature may delegate to the governor a duty that the constitution requires must be performed by the board of county commissioners.

. . . .

. . . . Assuming *arguendo* that the governor has the power to fill vacancies on a three-member board of county commissioners when there are two or three vacancies existing (a question which is not before us and which we do not decide), it does not follow that he has this power when there is only *one* vacancy, in view of Art. XI, § 6. The distinction is not based upon a difference of degree; it depends upon the existence or nonexistence of a quorum of the legally constituted board of county commissioners having full authority to make appointments.

In the instant case, appellant urges review and reversal of the cited case. He premises his request upon the grounds that (a) the legislature re-enacted RCW 36.32.070(3) subsequent to our decision; (b) the political hiatus created by the commissioners' disagreement is the equivalent of a legal hiatus, for the board is thereby rendered practically impotent in the management of county affairs; and (c) the cited decision is and was erroneous.

Essentially, the underlying arguments advanced by appellant are similar to those urged upon us in the cited case. They vary only in the premises from which they spring. They did not persuade us then, and they do not now.

Accordingly, we decline to overrule our prior decision.

This follows not only because we deem the decision to be proper, but for several additional reasons.

■ In the first place, the legislative re-enactment of RCW 36.32.070(3) cannot and does not overcome the constitutional barrier posed by Const. art. 11, § 6. Even should we consider the re-enactment a legislative dissent to the *Munro* case, *supra*—which under the circumstances[5] we do not—we are bound by the elementary principle enunciated in *Washington State Highway Comm'n v. Pacific Northwest Bell Telephone Co.*, 59 Wn.2d 216, 222, 367 P.2d 605 (1961) to the effect that:

> The construction of the meaning and scope of a constitutional provision is exclusively a judicial function. Art. 4, § 1, of the constitution, provides that "The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."
>
> The legislature has no constitutional power to define the meaning and scope of a constitutional provision.

Thus, the bare legislative re-enactment of an unconstitutional statute cannot serve to invest the statute with constitutionality. Something more, in the way of a duly enacted constitutional amendment, must be added.

■ In the second place, the *Munro* case, *supra*, represents this court's interpretation of Const. art. 11, § 6, and its applicability to a statutory provision indistinguishable from the present RCW 36.32.070(3). This interpretation has been in effect since its pronouncement in 1958. Since that time it has not only governed the ultimate disposition of the situation before the court in that case, but has presumably, if not actually, governed any intervening events of a similar kind which may have occurred. And, the

[5]Laws of 1963, ch. 4, which re-enacted RCW 36.32.070(3), is a general re-enactment of the whole of a title of the Revised Code of Washington to be known as Title 36, Counties. By section 36.98.010 of Laws of 1963, ch. 4, the legislature provided that the provisions of the act shall be construed as restatements and continuations, and not as new enactments. The legislature, therefore, did not undertake a deliberate and specific overriding of our decision relating to the pre-existing RCW 36.32.070(3).

superior court in the instant case properly sought to apply it. It should not, therefore, be lightly cast aside, for

> "A cardinal rule in dealing with constitutions is that they should receive a consistent and uniform interpretation, so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed as to make a different rule seem desirable. . . ." 6 R. C. L. 46. *State ex rel. Banker v. Clausen*, 142 Wash. 450, 454, 253 Pac. 805 (1927).

■ Finally, contrary to appellant's assertion, there is a clearly discernible distinction between a "political hiatus," created by a disagreement between two duly elected and incumbent county commissioners, and a "legal hiatus" created by the absence of a duly elected quorum membership upon the board. In the first situation, the two incumbent county commissioners make up a legally constituted board which can legally function and carry on the affairs of county government; whereas, in the second situation, no legally constituted board capable of lawful functioning exists. Political disagreement between the two elected and incumbent county commissioners does not divest them of their constitutional or statutory powers and duties nor does it, as we pointed out in the *Munro* case, *supra*, "create a situation in which the legislature may delegate to the governor a duty that the constitution requires must be performed by the board of county commissioners." In short, political disagreement and resultant failure to carry out their appointive function renders such commissioners answerable to their electorate—not to the legislature or to the Governor.

The judgment of the superior court is affirmed.

HILL, DONWORTH, WEAVER, HUNTER, and HALE, JJ., and BARNETT, J. Pro Tem., concur.

FINLEY, J. (dissenting)—The majority opinion accurately states that this appeal "confronts us with a query identical to that posed in *State ex rel. Carroll v. Munro*, 52 Wn.2d 522, 327 P.2d 729 (1958)." With this groundwork for a routine application of stare decisis, the majority proceeds

(I think too routinely and rigidly) to follow the reasoning, and adopt the result, of *Carroll v. Munro, supra.* Adherence to precedent is, of course, a stellar premise in the firmament of common law jurisprudence. The result, apparently vouchsafed by this doctrine of the ages and the sages, is, at least theoretically, a symmetrical, seamless web of decisional law which is aesthetic, logical, and predictable, stable and permanent. But overlooked, in my view, or ignored, is the fact of life and experience that the doctrine of stare decisis can also, unfortunately, perpetuate error and injustice by automatic application of judge-made rules of law as to which objective analysis and reasoning may have been either deficient or absent altogether. The "seamless web" remains intact—but at the expense of truth and justice. Thus, is it so beautiful a thing to behold—and to be held, unquestionably, in such awe and deference?

Article 11, § 6, of the state constitution provides:

The board of county commissioners in each county shall fill all vacancies occurring in any county, township, precinct or road district office of such county by appointment, and officers thus appointed shall hold office till the next general election, and until their successors are elected and qualified.

RCW 36.32.070 (3) provides:

Whenever there is a vacancy in the board of county commissioners, it shall be filled as follows:

(1) If there are three vacancies, the governor of the state shall appoint two of the officers. The two commissioners thus appointed shall then meet and select the third commissioner. If the two appointed commissioners fail to agree upon selection of the third after the expiration of five days from the day they were appointed, the governor shall appoint the remaining commissioner.

(2) Whenever there are two vacancies in the office of county commissioner, the governor shall appoint one commissioner, and the two commissioners then in office shall appoint the third commissioner. If they fail to agree upon a selection after the expiration of five days from the day of the governor's appointment, the governor shall appoint the third commissioner.

(3) *Whenever there is one vacancy in the office of*

*county commissioner, the two remaining commissioners*
*shall fill the vacancy. If the two commissioners fail to*
*agree upon a selection after the expiration of five days*
*from the day the vacancy occurred, the governor shall*
*appoint the third commissioner.* (Italics mine.)

The specific problem in the instant case is whether the statute, RCW 36.32.070(3), conflicts with or merely supplements the provisions of Const. art. 11, § 6. In other words, the question is whether the Governor should have and by judicial decision does have the power and authority to fill the vacancy on the Kitsap County Board of County Commissioners when the two remaining commissioners are unable to agree upon the appointment of a successor for a deceased member of the board.

The constitution is not explicit and clear as to what should happen upon the advent of a practical and political problem or hiatus such as in the instant case. Judicial interpretation of the constitution is essential to resolve the problem one way or the other. The statute, I think, is both clear and explicit as to the constitutional hiatus—or as to filling the apparent void in the constitution. It seems to me it offers and thus encourages a common-sense solution of the problem. On occasions too numerous to require citation, the courts in effect have said that legislative enactments should be given a common-sense interpretation and should be upheld insofar as reasonably possible.

The majority, citing *State ex rel. Carroll v. Munro, supra,* state that the Governor cannot be authorized by statute to divest the two remaining members of the board of their constitutional appointive power. No mention is made of the fact that the cited case was a five-to-four decision. Judge Rosellini wrote an extremely persuasive and cogent dissent, concurred in by three other present members of this court, including the writer of this dissent. At the time of the decision in *State ex rel. Carroll v. Munro, supra,* I was strongly convinced that an unnecessary and wrong result was reached. I think the result is just as unnecessary and wrong today in the instant case. The reasons in support of these convictions are so clearly and effectively stated in

the above-mentioned dissent by Judge Rosellini that I could not and shall not attempt to improve upon them.

Suffice it to say that the opinion in the instant case unfortunately utilizes the artificial and fictional distinction between a so-called "legal hiatus" and a "political hiatus"— incidentally, a new and novel distinction, first conceived by the majority in *State ex rel. Carroll v. Munro, supra.* A "political hiatus", supposedly, is created by a disagreement between two duly elected county commissioners; while a "legal hiatus" is quite a different kettle of fish, said to exist only where there is an absence of a duly elected quorum membership on the board. In the words of the majority herein:

> In the first situation, the two incumbent county commissioners make up a legally constituted board which *can* legally function and carry on the affairs of county government; whereas, in the second situation, no legally constituted board capable of lawful functioning exists. (Italics mine.)

In the area of local government this distinction between law and politics is, at best, an ephemeral one; and it is an obvious possibility if not a probability that a disagreement between the two remaining commissioners (of opposing party affiliation) over the appointment of a third commissioner will carry over into all phases of the operations of county government. Instead of rigidly interpreting the state constitution to perpetrate this kind of impasse, I would prefer to interpret RCW 36.32.070(3) as implementing and supplementing, rather than detracting from, the pertinent portion of the Washington state constitution, art. 11, § 6.

Sometimes, but perhaps not too often, legal logic assumes or coincides with ultimate or absolute attributes or values. But the seemingly pleasing and diverting syllogism which won the tournament in *Carroll v. Munro, supra,* ill conceals its palpably synthetic and fictional characteristics. The following comments of Holmes, J., seem apt:

> The training of lawyers is a training in logic. The processes of analogy, discrimination, and deduction are those in which they are most at home. The language of judicial

decisions is mainly the language of logic. And the logical method and form flatter that longing for certainty and for repose which is in every human mind. But certainty generally is illusion, and repose is not the destiny of man. Behind the logical form lies a judgment as to the relative worth and importance of competing legislative grounds, often an inarticulate and unconscious judgment, . . . and yet the very root and nerve of the whole proceeding. You can give any conclusion a logical form. 10 Harv. L. Rev. 457, 465 (1897).

The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. Holmes, the Common Law 1 (1881).

It should be quite apparent from the foregoing that I strongly disagree with the majority. This is largely for the reasons so well stated in the dissent in *State ex rel. Carroll v. Munro, supra.* In a nutshell, I cannot accept the doctrine of stare decisis as the final word in decision making when it rests upon such a precarious footing as in the instant case, and when there are considerations which appear to me to be very strong and most persuasive justification for different results, both in *State ex rel. Carroll v. Munro, supra,* and in the instant case. I dissent as vigorously as possible, considering the amenities of the judicial process.

ROSELLINI, C. J. (dissenting)—I concur specially with Finley, J., and adhere to the views expressed in my dissent in *State ex rel. Carroll v. Munro,* 52 Wn.2d 522, 327 P.2d 729 (1958).