[No. 27280. *En Banc.* August 22, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Charles H. Todd, Plaintiff,* v. BELLE REEVES, *as Secretary of State, et al., Respondents.*[1]

[1]Reported in 82 P. (2d) 173.

*Charles H. Todd, pro se.*

*The Attorney General* and *John E. Belcher, Assistant,* for respondent Reeves.

*Arthur E. Carr, O. A. Schumann, Sandvig & Walters,* and *McAulay, Stroud & Thurston,* for respondent McAulay.

GERAGHTY, J.—This is an original application for a writ of prohibition directed to Belle Reeves, secretary of state, prohibiting her from certifying to the auditors of the several counties, for printing upon the ballots at the ensuing primary election, the name of George F. McAulay as a candidate for nomination to the office of judge of the supreme court, in position No. 3.

The conceded facts, as they appear in the relator's petition and in the answer of respondents Reeves and McAulay, are:

The respondent McAulay is a senator of the state of Washington, serving a four-year term commencing in January, 1937, and terminating in January, 1941. He has never held a judicial office in the state. He has duly filed with the secretary of state his declaration of candidacy for the office of judge of the supreme court, in position No. 3. The primary election will be held September 13, 1938, and the secretary of state is required by law (Laws of 1935, chapter 26, p. 60, § 1), Rem. Rev. Stat. (Sup.), § 5185 [P. C. § 2230], to transmit to each county auditor of the state, at least twenty days before the date of the primary, a certified list containing the names of all persons to

be voted for at the primary as they appear by the nomination papers filed in her office.

The 1937 legislature, of which respondent McAulay was a member, enacted a law, chapter 229, p. 1172, Rem. Rev. Stat. (Sup.), § 11054-1 [P. C. § 4418-201] *et seq.*, entitled:

"AN ACT providing for the retirement of judges of the supreme and superior courts; fixing the amount of their retirement pay; providing funds therefor; and making an appropriation."

Section 1 of the act, p. 1172, Rem. Rev. Stat. (Sup.), § 11054-1 [P. C. § 4418-201], provides, among other things, that judges of the supreme and superior courts who have served as judge of either or both of such courts eighteen years in the aggregate, or who, having served ten years in the aggregate, shall have attained the age of seventy years, may retire on half pay. Section 2 of the act, p. 1173, Rem. Rev. Stat. (Sup.), § 11054-2 [P. C. § 4418-202], provides for retirement on half pay of judges who shall, after a service of ten years in the aggregate, become incapacitated.

The act provides that 2½ per cent of the monthly salary of each judge shall be deducted and placed in a retirement fund created by the act. The state is to contribute to the fund an amount equal to the accruals from salary deductions, and the act carried an appropriation of ten thousand dollars for that purpose for the ensuing biennium.

It is the relator's contention that the emoluments of the office of judge were increased by chapter 229, thereby disqualifying the respondent McAulay, under § 13 of Art. 2 of the state constitution, from holding the office during the senatorial term to which he was elected. The cited section of the constitution provides:

"No member of the legislature during the term

for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

That the relator, as a citizen and taxpayer, may maintain this action, is sustained by our decisions in *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, 41 L. R. A. (N. S.) 1119; and *State ex rel. Chandler v. Howell,* 104 Wash. 99, 175 Pac. 569.

In view of the emergent nature of the controversy and the necessity for an early decision, we shall confine our discussion within the narrow limits fixed by the facts in the immediate controversy. Whether the retirement provision is to be classified as a pension, as adjusted or deferred compensation, or as a type of insurance, we do not feel called upon to discuss or decide at this time. Our inquiry will be limited to the question whether there is any increase in the emoluments of the office effective during the six-year term for which the respondent McAulay has filed his declaration.

The word "emolument" is defined in Webster's dictionary as "profit from office, employment, or labor; compensation; fees or salary." This definition is substantially the same as that found in the decisions of the courts. That the word was employed in the constitution in its ordinary sense, as implying actual pecuniary gain, rather than some imponderable and contingent benefit, can hardly be questioned.

From our summary of the pertinent provisions of the act, it is manifest that it is made a prerequisite to the receipt of any retirement allowance that a judge must have had, in the aggregate, a minimum service of ten years. To attain the minimum service entitling him to retirement, it would be necessary for respondent McAulay to be elected to a second term. Assum-

ing he were elected for the six-year term for which he has filed, he would, unless re-elected, retire from office with no benefit, direct or contingent, but at a loss of $1,050, representing the contribution from his salary required to be made to the retirement fund. Of course, he would have to his credit six years of the minimum service required for participation in the benefits of the act, but to attain this goal, he would have to pass successfully the hurdle of a second election; during his first term he would have nothing more substantial than the hope of gaining a goal, the monetary value of which no actuary could evaluate.

It is true that a degree of uncertainty exists after the attainment of ten years' service. A judge, with ten years or more of service to his credit, but in good health and under seventy years of age, might be defeated for re-election, and thereby be deprived of any benefit under the act. But there is, at least, always, after ten years' service, the possibility of retirement in case of incapacity of an incumbent by reason of ill health.

The relator says in his brief:

"We believe that by passing chapter 229 of the session laws of 1937 the legislature made the office of justice of the supreme court more desirable. The fact that it becomes more desirable tends to induce an improper bias in the mind of a legislator who might subsequently aspire to election to that office. We believe, therefore, that the benefits to the office of justice of the supreme court derived from the Retirement Act fall within the ban of increased emoluments forbidden by the constitution."

Many things might be done by a legislature tending to render the office of judge more desirable which could not be classified as emoluments within the inhibitions of the constitution. For instance, liberal appropriations for clerical service, library, and other

facilities, and the addition of more members, if a court were undermanned for the volume of its work, would make the office more desirable. While the provision for retirement makes the office more attractive, the fact remains that no emolument, within the meaning of § 13, Art. 2, *supra,* could attach during respondent McAulay's first six-year term.

We are satisfied that the constitutional provision invoked by the relator is not a bar to the eligibility of respondent McAulay. The writ is denied.

STEINERT, C. J., HOLCOMB, BEALS, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J. (dissenting)—This is an application for a writ of prohibition directed to the secretary of state. The facts upon which the application is rested are undisputed. They are as follows: The defendant McAulay filed with the defendant Reeves, as secretary of state, his declaration of candidacy for the office of judge of the supreme court. At the general election of 1936, defendant McAulay was elected to the office of state senator. The term for which he was elected does not expire until January, 1941. The legislature to which he was elected as a member of the senate passed what is known as the Judges' Retirement Act. Laws of 1937, chapter 229, p. 1172. Upon these facts, the relator asserts that, under Art. 2, § 13, of the state constitution, defendant McAulay is ineligible to hold the office of judge of the supreme court. For that reason, he seeks to enjoin the printing of Senator McAulay's name on the ballot for the primary election to be held in September.

Under the decisions of this court, there is no question but that relator, as an elector and taxpayer, has the right to maintain such an action. *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, 41

L. R. A. (N. S.) 1119; *State ex rel. Chandler v. Howell,* 104 Wash. 99, 175 Pac. 569.

Senator McAulay's eligibility to hold the office of judge of the supreme court depends upon whether or not the legislature, by Laws of 1937, chapter 229, increased the emoluments of that office. For the constitution (Art. 2, § 13) provides:

"No member of the legislature during the term for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, *or the emoluments of which shall have been increased, during the term for which he was elected.*" (Italics mine.)

Laws of 1937, chapter 229, provides (§ 1) that judges of the supreme and superior courts, who have served eighteen years in the aggregrate, or, having served ten years in the aggregate, shall have attained the age of seventy, or who (§ 2), having served ten years in the aggregate, shall have become incapacitated, may retire on half pay. By § 7, p. 1176, Rem. Rev. Stat. (Sup.), § 11054-7 [P. C. § 4418-207], of the act, there was created "The Judges' Retirement Fund." Provision for the establishment and maintenance of this fund was made by a two and one-half per cent contribution by the judges from their salaries, matched by a like amount from the state. Provision was made (§ 9, p. 1178, Rem. Rev. Stat. (Sup.), § 11054-9 [P. C. § 4418-209]) for the state's contribution to the fund for the biennium ending March 31, 1939, by an appropriation of ten thousand dollars from the general fund.

The question, then, is: Have the *emoluments* of the office of judge of the supreme court been increased by the provisions of the act? To this question, under all the definitions (lay and legal) of the word "emoluments," I can find but an affirmative answer.

In *Hoyt v. United States,* 51 U. S. 108, the court, in discussing fees, commissions, fines, etc., a portion of which were allowable by statute as compensation to the collector of the port of New York, said:

"They are also distinguishable from the term *emoluments,* that being more comprehensive, and embracing every species of compensation or pecuniary profit derived from a discharge of the duties of the office."

The supreme court of Minnesota, defining the term in *State ex rel. Benson v. Schmahl,* 125 Minn. 104, 145 N. W. 794, said:

"We think it clear that the word emoluments in the Constitution does not refer to the fixed salary alone, but includes such fees and compensation as the incumbent of an office is by law entitled to receive because he holds such office and performs some service required of the occupant thereof. The Century Dictionary defines emoluments as: 'The profits from office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and perquisites,' and to this definition Bouvier adds: 'It imports any perquisite, advantage, profit or gain arising from the possession of an office.'"

That the right to retirement pay is a "perquisite" of the office of judge of the supreme court seems to me obvious. For the right is essentially a pecuniary advantage arising out of the occupancy of, and service in, such office for the length of time and under the conditions prescribed by chapter 229, Laws of 1937. It is only upon the basis of occupancy and service in the office that acts providing for retirement pay are held to be constitutional appropriations of public funds. *Schieffelin v. Berry,* 217 App. Div. 451, 216 N. Y. Supp. 367; *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 Atl. 400.

Quite a persuasive argument is made to the effect

that Senator McAulay cannot, during the term of the judicial office to which he aspires, possibly become a beneficiary under the provisions of chapter 229, Laws of 1937; that, assuming his election, he would have to be re-elected in order to be eligible to any benefits; that, in the meantime, his salary as judge would not have been increased, but, under the terms of the act, diminished by two and one-half per cent. I think, however, that acceptance of the validity of that argument amounts to nothing short of judicial supplementation of Art. 2, § 13. The section is too plain to permit of such construction. It, of course, does not mean that, because defendant was and is a member of the legislature which passed chapter 229, Laws of 1937, he is forever ineligible for the office of judge of the supreme or superior court. It simply means that, in view of the provisions of that chapter, he is ineligible to the office of judge of the supreme or superior court "during the term for which he was elected" *to the legislature.* Of an identical constitutional provision, the supreme court of Wisconsin, in *State ex rel. Ryan v. Boyd,* 21 Wis. 210, said:

"It is not contended on behalf of the respondent, that the disqualification created by this provision is anything more than a temporary one only, forbidding the election or appointment of members of the legislature to offices created or rendered more lucrative by themselves, during the term for which they were elected such members. Mr. Justice STORY, in commenting upon a kindred provision in the constitution of the United States, says: 'The reasons for excluding persons from offices who have been concerned in creating them, or increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness. The actual provision, however, does not go the

extent of the principle; for his appointment is restricted only during the time for which he was elected, thus leaving in full force every influence upon his mind, if the period of his election is short, or the duration of it is approaching its natural termination.' Story's Com. on Const., § 864. The learned author adds, that while it has sometimes been a matter of regret that the disqualification has not been made co-extensive with the supposed mischief, and thus have forever excluded members from the possession of offices created or rendered more lucrative by themselves, yet that perhaps there is quite as much wisdom in leaving the provision where it now is. These remarks are quite applicable to the clause of our state constitution above cited; since an examination of it will clearly show that the disqualification thereby created is not permanent, but only temporary, continuing for the time the person is a member of the legislature. . . . When a new office is created, or the emoluments of an old one increased, while a person is a member of the legislature, such person cannot, during the time for which he was elected, be appointed or elected to the office he has had an agency in creating or rendering more profitable."

Since the emoluments of the judicial office were increased by the legislature of which Senator McAulay was a member, and since the term of his office as a member of such legislature has not expired, he is ineligible to the office of judge of the supreme court. I think, therefore, the writ should be granted.

Main, J., concurs with Blake, J.

Millard, J. (dissenting)—As the question of jurisdiction is foreclosed by a number of our opinions I concur in the opinion of Judge Blake that the writ should be granted.