[No. 30091. *En Banc.* October 4, 1946.]

THE STATE OF WASHINGTON, *on the Relation of Blanche Pennick et al., Plaintiff,* v. CHARLES W. HALL, *as Judge of the Superior Court for Grays Harbor County, Respondent.*[1]

[1]Reported in 173 P. (2d) 153.

*Dan F. Lawwill* and *John E. Close,* for appellants.

*Brodie & Brodie,* for respondent.

MILLARD, J.—On the ground of ineligibility, under Art. II, § 13, state constitution, the superior court for Grays Harbor county granted application of a qualified voter of that county, September 16, 1946, for a writ prohibiting the Grays Harbor county election board from certifying the name of Blanche Pennick on the official ballot to be used in the general election to be held November 5, 1946, as Democratic candidate for the office of auditor for Grays Harbor county. The relators (Blanche Pennick and the members of the Grays Harbor county election board) by this proceeding seek review and reversal of the decree that Blanche Pennick is ineligible for the office she seeks.

Blanche Pennick was elected in 1944 as a member of the legislature from the 19th district, which embraces Grays Harbor county, for the twenty-ninth session of the state legislature. Her term of office, which commenced January 8, 1945, will expire the second Monday in January, 1947. She was a member of the legislature at the time of the enactment of chapter 87, p. 240, Laws of 1945 (Rem. Supp. 1945, § 4200-5a), which increased the annual salaries of county officers. The annual salary of auditor for Grays Harbor county was increased under that statute from its present amount of twenty-four hundred dollars to thirty-six hundred dollars, with the new term commencing the second Monday in January, 1947. In the primary election of July 9, 1946, Blanche Pennick was the successful nominee of the

Democratic party for the office of auditor for Grays Harbor county.

Relators challenge the right of the voter in the trial court to institute the action to prohibit certifying name of Blanche Pennick on the official ballot. Relators also contend that the action was not timely.

██ The right to maintain an action questioning the eligibility of a candidate for election to a public office is inherent in a citizen and an elector. See *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, 41 L. R. A. (N.S.) 1119; *State ex rel. Todd v. Reeves,* 196 Wash. 145, 82 P. (2d) 173.

Rem. Rev. Stat., § 5202 [P.P.C. § 529-55] reads as follows:

"Whenever it shall appear by affidavit to any judge of the supreme court or superior court of the county that any error or omission has occurred or is about to occur in the printing in the name of any candidate on official ballots, or that any error has been or is about to be committed in printing the ballots, or that the name of any person has been or is about to be wrongfully placed upon such ballots, or that any wrongful act has been performed or is about to be performed by any judge or clerk of the primary election, the county auditor, canvassing board or member thereof, or by any person charged with a duty under this act, or that any neglect of duty by any of the persons aforesaid has occurred, or is about to occur, such judge shall, by order, require the officer or person or persons charged with the error, wrongful act or neglect, to forthwith correct the error, desist from the wrongful act, or perform the duty, and to do as the court shall order, or to show cause forthwith why such error should not be corrected, wrongful act desisted from, or such duty or order not performed. Failing to obey the order of such court shall be contempt. Any candidate at such primary election who may desire to contest the nomination of any candidate for the same office at said primary election may proceed by such affidavit so presented: Provided, that such affidavit may be presented within five days after the completion of the canvass by said canvassing board, and not later, and the candidate whose nomination is so contested shall, by order of such judge, duly served, be required to appear and abide by the orders of the court to be made therein."

The first portion of the provision quoted above involves an affidavit which may be submitted by anyone to a judge of a superior court, or to this court, for the purpose of correction of errors or omissions in printing ballots, or to correct an error or wrongful act that has been performed or is about to be performed by any canvassing board or election officers. The other portion of the act has to do with actions instituted by a candidate to contest the result of any primary election, which must be commenced within five days after completion of the canvass by the canvassing board.

■ The case at bar has to do with the question of eligibility of one who seeks to be a candidate for public office. The question of eligibility is, of course, a continuing one. This action could be brought prior to the primary election or at any time subsequent thereto.

The constitutional provision upon which respondent relies as establishing the ineligibility of Blanche Pennick reads as follows:

"No member of the legislature during the term for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected." State Const., Art. II, § 13.

■ Respondent contends that Blanche Pennick is ineligible for election to the office of county auditor for Grays Harbor county in the election to be held November 5, 1946, as the salary for the office of county auditor for the ensuing term was increased by the session of the legislature of which she was a member.

The expiration of Blanche Pennick's term of office as a member of the legislature is contemporaneous with the commencement of the term of county auditor for Grays Harbor county. The inhibition in the constitutional provision quoted above that no member of the legislature, during the term for which he is elected, shall be elected to any civil office in the state, the emoluments of which shall have been increased during the term for which such member was elected, is not limited to the incumbency of the legis-

lator, but is extended to the term for which he shall have been elected. A member of the legislature cannot qualify himself for election during his elective term to any civil office in this state which shall have been created or the emoluments of which shall have been increased during his elective term, by resignation or by any other act on his part. The reason for the rule is stated, as follows, by Judge Story in his work on the constitution of the United States:

" 'The reasons for excluding persons from offices who have been concerned in creating them, or in increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness.' " *State ex rel. Ryan v. Boyd,* 21 Wis. 210.

In *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, we construed Art. IV, § 15, of the state constitution, which reads as follows:

"The judges of the supreme court and the judges of the superior court shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected."

In the case cited, we sustained the contention of the relator that the constitutional provision last quoted meant that the candidate for governor, whose judicial term of office would expire the second Monday of January, 1913, was not eligible to be elected to any office other than a judicial one during his term, although the term of the office of governor commenced two days subsequent to the date of the expiration of the candidate's judicial term.

In that case, we did not agree with the candidate's contention that the ineligibility extended only to *holding* another office during his term and that, as his term of judge would expire a day or more prior to the beginning of the governor's term, he was eligible for election to the governorship.

The candidate in the case at bar makes a similar argument. She contends that, as the county auditor's term commences contemporaneous with expiration of her term of office as a member of the legislature, she is not ineligible

during her term as a member of the legislature for election to the office of county auditor.

In principle, the case cited and the case at bar are indistinguishable. In each the question presented is one of eligibility to office. It is prerequisite to eligibility for election in the sense of becoming a candidate and participating in the election process that a candidate be, at that time, eligible to hold the office.

In *State ex rel. Todd v. Reeves,* 196 Wash. 145, 82 P. (2d) 173, 118 A. L. R. 177, we held that a candidate for the state supreme court who was a member of the legislature which enacted a statute providing for retirement pay of members of the supreme court was eligible for the office of judge of this court; that Art. II, § 13 of the state constitution, did not disqualify the member of the legislature from being a candidate during the continuance of his term as legislator for the office of judge of the supreme court in view of the fact that the word "emolument" as used in the constitutional provision contemplates actual pecuniary gain rather than some imponderable and contingent benefit, of the nature of retirement benefits under the statute in question. We said that the provisions of the statute as to retirement benefits entitled the person in question to no more than contingent benefits, depending upon his re-election, and that the mere fact that the statute made the office of the judge more desirable for a candidate to fill was not tantamount to an increase in its emoluments.

In *State ex rel. Ryan v. Boyd,* 21 Wis. 210, which supports respondent's position, Ryan was a member of the legislature at the time of his election to the existing office of county judge, the emoluments of which were increased during his term as a member of the legislature, but subsequent to his election to the office of county judge. The supreme court of Wisconsin held, under a constitutional provision, like the one before us in the case at bar, that the emoluments of the office of county judge had not been increased when Ryan was elected to it but had been increased by a subsequent enactment, and that the increase was not within the prohibition of the constitution. The court said:

"It is true, the increase of the emoluments of the office was during the time the relator was a member of the legislature, but subsequent to his election to the office of county judge. Does such a case come within the prohibition of the constitution? It is not within the language of the provision, according to its most natural grammatical construction. That only forbids a member of the legislature, while such member, from being appointed or elected to any civil office which *shall have been previously created, or the emoluments of which shall have been previously increased,* during the term for which he was elected. When a new office is created, or the emoluments of an old one increased, while a person is a member of the legislature, such person cannot, during the time for which he was elected, be appointed or elected to the office he has had an agency in creating or rendering more profitable. But the creation of the new office, or increase in the emoluments of an old one, must have taken place prior to the appointment or election of the member to such new office or existing one, to bring the case within the prohibition. The future perfect tense is used—an office *'which shall have been created,* or the emoluments of which *shall have been increased,'* etc.—indicating a future action done and completed before the appointment or election, the other future action to which it refers."

██ The constitutional provision (Art. II, § 13) was written to prevent one who has been concerned in creating an office or in increasing its emoluments from aspiring to such office not only while he is an incumbent of the office which created the other office or increased its emoluments, but for a definite time. The purpose of the constitutional provision in question is, as stated in *Fyfe v. Kent County Clerk,* 149 Mich. 349, 112 N. W. 725: "To preserve a pure public policy."

The judgment is affirmed.

STEINERT, ROBINSON, SIMPSON, JEFFERS, and SCHWELLENBACH, JJ., concur.

CONNELLY, J. (dissenting)—The majority opinion seeks to carry out the constitutional prohibition against a member of the legislature participating in the creation of a new public office or in an increase in the emoluments of an existing office, and thereafter enriching himself by securing his own

election or appointment to such office. The section of the constitution under inquiry is Art. II, § 13, which reads as follows:

"No member of the legislature *during the term for which he is elected* shall be appointed or elected to any civil office in the state which *shall* have been created, or the emoluments of which *shall* have been increased, *during the term for which he was elected.*" (Italics mine.)

I subscribe fully to the rule announced by Judges Blake and Millard in their dissenting opinion in *State ex rel. Todd v. Reeves,* 196 Wash. 145, 82 P. (2d) 173, that the constitutional disqualification for a legislator seeking to become a supreme court judge is confined to the period of time during which he was a legislator and not thereafter. Their exact language was:

"It [Art. II, § 13], of course, does not mean that, because defendant was and is a member of the legislature which passed chapter 229, Laws of 1937, he is forever ineligible for the office of judge of the supreme or superior court. It simply means that, in view of the provisions of that chapter, he is ineligible to the office of judge of the supreme or superior court 'during the term for which he was elected' *to the legislature.*"

In support of that holding, the Wisconsin case entitled *State ex rel. Ryan v. Boyd,* 21 Wis. 210, was cited, and the following language from the opinion in that case was quoted:

"Mr. Justice Story, in commenting upon a kindred provision in the constitution of the United States, says: 'The reasons for excluding persons from offices who have been concerned in creating them, or increasing their emoluments, are to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness. The actual provision, however, does not go the extent of the principle; *for his appointment is restricted only during the time for which he was elected, thus leaving in full force every influence upon his mind, if the period of his election is short, or the duration of it is approaching its natural termination.*' "

It seems plain that the language in the constitutional provision, "during the term for which he is elected," used twice,

by the way, in one short sentence, means that the legislator shall not be eligible to any civil office in the state which was first created, or the emolument thereof increased, *during the member's term in the legislature,* and that the legislator cannot occupy such a position *during* the term for which he was elected.

The county auditor's pay increase is not now in effect and will not be in effect during any part of the period of relator's tenure as a legislator. It will go into effect with the commencement of the auditor's term of office in January, 1947, which will be after the termination of relator's legislative office. The instances to which the constitutional prohibition may readily apply are numerous. The legislature has, on many occasions, created new commissions and new offices, or increased the salary and emoluments of existing offices, to go into effect immediately or at a fixed time *within the term of office of the legislators who brought such change about.* See *State ex rel. Livingston v. Ayer,* 23 Wn. (2d) 578, 161 P. (2d) 429.

Surely, it will not be contended that relator would be barred from running for a county office four years from now because she was a member of a legislature which had recognized the rising tide of living costs and, accordingly, increased the salaries of county officials. Where, then, must the line be drawn? I feel that Justice Story's observations contained in the dissent in the *Todd* case, together with the opinion in *State ex rel. Ryan v. Boyd, supra,* the Wisconsin case, announce the proper rule.

For the reasons expressed herein, I dissent from the majority.

MALLERY, J., concurs with CONNELLY, J.