[No. 43890. En Banc. December 4, 1975.]

KAY D. ANDERSON, *Petitioner*, v. BRUCE CHAPMAN, *as Secretary of State*, ET AL, *Respondents*, ROBERT T. DALY, ET AL, *Intervenors*.

*Kafer, Wilson & Good,* by *John L. Wilson* and *Randall L. St. Mary,* for petitioner.

*Slade Gorton, Attorney General,* and *Wayne L. Williams, Assistant,* for respondent State.

*Collier, Kukuk & Kennedy,* by *Gerald F. Collier* and *Thomas N. Bucknell,* for respondent Ceccarelli.

*Robert T. Daly* and *Richard E. Van Horn,* pro se.

WRIGHT, J.—This case involves the application of Const. art. 2, § 13, which reads:

> No member of the legislature, *during the term for which he is elected,* shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, *during the term for which he was elected.*

(Italics ours.)

The facts which gave rise to this litigation are not in dispute. An act (Laws of 1975, 1st Ex. Sess., ch. 263, p. 869) which raises the annual salary of the Secretary of State from $15,800 to $21,400 was passed by the legislature. Respondents Dave Ceccarelli and Eugene L. Laughlin were members of the House of Representatives and in fact were present and voted in favor of the bill which was signed by the Governor on June 30, 1975, and took effect July 1, 1975.

Early in the year 1975, A. Ludlow Kramer resigned from the office of Secretary of State and the Governor appointed Bruce K. Chapman to fill the vacancy. The legislature then passed chapter 3, Laws of 1975, second extraordinary session, which provided, *inter alia,* for election at odd year elections for the office of Secretary of State to complete an unexpired term. This court held the unexpired term should be filled in the 1975 elections. *Daly v. Chapman,* 85 Wn.2d 780, 539 P.2d 831 (1975).

The respondents, Ceccarelli and Laughlin, filed for the

office of Secretary of State to be voted on in the 1975 elections. Thereafter, the petitioner, Kay D. Anderson, instituted this action seeking an original writ of mandamus or in the alternative a writ of prohibition to prevent the respondents, Ceccarelli and Laughlin, from being candidates.

The legislature attempted to engraft upon chapter 263, the following proviso:

PROVIDED FURTHER, That a member of the legislature whose term of office is partly co-extensive with or extends beyond the present term of office of any of the officials whose salary is increased by virtue of the provisions of sections 1 through 5 of this act shall be eligible to be appointed or elected to any of the offices the salary of which is increased hereby but he shall not be entitled to receive such increased salary until after the expiration of his present term of office and his subsequent election or reelection to the office to which he was appointed or elected respectively during his term of office as legislator.

The question before us relates to the validity of the proviso and specifically if respondents, Ceccarelli and Laughlin, can file for and seek the office of Secretary of State in the 1975 elections. We have heretofore held by order that they are not eligible.

The first rule of constitutional construction which we should consider is the rule that if a constitutional provision is plain and unambiguous on its face, then no construction or interpretation is necessary or permissible. In *State ex rel. Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 247 P.2d 787 (1952) the court (per Finley, J.) said in part at page 145: "It is a cardinal principle of judicial review and interpretation that unambiguous statutes and constitutional provisions are not subject to interpretation and construction." In *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 452 P.2d 943 (1969) the court (per Rosellini, J.) said in part at page 557: "If the constitutional language is clear and unambiguous, interpretation by the courts is improper." In *State ex rel. Swan v. Jones*, 47 Wn.2d 718, 289

P.2d 982 (1955) the court (per Finley, J.) said in part at page 722: " '[W]*here the intention is clear there is no room for construction and no excuse for interpolation or addition.*' " The last quoted language was quoted by the court from *United States v. Sprague*, 282 U.S. 716, 75 L. Ed. 640, 51 S. Ct. 220, 71 A.L.R. 1381 (1931).

Another rule which is important to this matter is that the provisions of a constitution are mandatory unless otherwise stated. The general rule is stated in 16 C.J.S. *Constitutional Law* § 61 (1956) wherein it is said: "Generally, constitutional provisions are to be construed as mandatory unless, by express provision or by necessary implication, a different intention is manifest."

In this state the constitution itself expresses that rule in even more forceful language. Const. art. 1, § 29 reads: "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."

That provision likewise being clear and unambiguous has been the subject of comparatively few judicial comments. The provision is mentioned in a few cases including *State ex rel. Smith v. Neal*, 25 Wash. 264, 65 P. 188 (1901); *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 273 P.2d 464 (1954); and in a concurring opinion (per Finley, J.) in *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975); a dissenting opinion (per Utter, J.) in *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 512 P.2d 1094 (1973); and a dissenting opinion (per Wright, J.) in *State ex rel. Graham v. Olympia*, 80 Wn.2d 672, 497 P.2d 924 (1972).

The constitutional provision with which we are primarily concerned herein (Const. art. 2, § 13) has likewise been the subject of but few cases. Those cases may be grouped into several categories. Two cases are addressed to the question of what is a civil office.

*State ex rel. French v. Clausen*, 107 Wash. 667, 182 P. 610 (1919) involved membership on the Industrial Code Commission. The statute (Laws of 1919, ch. 184, p. 566) provided that one member of the commission should be a member of the Senate and one member should be a mem-

ber of the House of Representatives. French, one of the legislators appointed to the commission, was a member of the 1919 legislature which created the commission. Briefly stated, the holding was that while the statute creating the commission was valid, the portion providing for membership by two legislators was not valid, because such membership was a "civil office." French was prevented from recovering his expenses of $6.54 for attending a session of the commission.

*Oceanographic Comm'n v. O'Brien,* 74 Wn.2d 904, 447 P.2d 707 (1968) involved membership on the unsalaried Oceanographic commission. Laws of 1967, ch. 243, p. 1344, created the commission. Six members were by statute to be legislators. Without passing on the validity of the act as a whole, the court held legislators who had been members of the 1967 legislature were ineligible to membership on the commission, because such membership was a "civil office."

Two cases deal with the desire of one George F. McAulay to become a member of the Supreme Court by election. McAulay was a member of the Senate in the 1937 session which passed an act (Laws of 1937, ch. 229, p. 1172) which provided a pension system for judges. McAulay had never been a judge. The act provided one might be eligible for a pension if (a) he had served a total of 18 years on a court of record, or (b) he had served a total of 10 years and had reached the age of 70 years, or (c) he had served a total of 10 years and become incapacitated. The then Secretary of State refused to accept a filing from McAulay on the basis that the enactment of the pension act by a legislature of which he was a member would render him ineligible.

*State ex rel. McAulay v. Reeves,* 196 Wash. 1, 81 P.2d 860 (1938) held the Secretary of State had absolutely no power to determine the eligibility of candidates for public office. The courts, and only the courts, have the power and authority to determine who may be a candidate for public office. An original writ of mandate was issued requiring the Secretary of State to accept the filing. The matter was soon

before the Supreme Court again, and McAulay was held to be eligible.

*State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P.2d 173, 118 A.L.R. 177 (1938) held the pension could not possibly be deemed an emolument of the office because McAulay was seeking a 6-year term and under no set of circumstances, as the law was then, could he be entitled to a pension until after 10 years of service on a court of record.

The next two cases to be discussed deal primarily with the matter of the relation of the end of the legislative term and the start of the term of office for which the emoluments had been increased.

*State ex rel. Pennick v. Hall*, 26 Wn.2d 172, 173 P.2d 153 (1946) held in essence that if the office were to be filled by an election held during the same legislative term of office of the legislator as the term in which the salary increased was enacted, the legislator would be ineligible. This would be true even if the term sought did not start until after the legislator's term as a legislator had expired. That holding was overruled in *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 413 P.2d 972 (1966), which held the prohibition was against overlap of terms.

We are not concerned with the problem addressed in *Pennick* and in *O'Connell* because the term sought herein would start in December 1975 and the term of the respondents, Ceccarelli and Laughlin, as legislators would not end until January 1977. We, therefore, do not have to consider or discuss the matter of whether *Pennick* or *O'Connell* is the correct decision.

Some language in *O'Connell* makes clear the distinction. Therein it is said at page 568: "if the legislator's term of office and the term for which the greater salary will be received coincide or substantially overlap, then the legislator would be ineligible."

The final case we shall discuss is *State ex rel. Carroll v. Munro*, 52 Wn.2d 522, 327 P.2d 729 (1958). In that case there were badly fragmented opinions, there being three opinions—none of which received a majority. The office in

question therein was county commissioner. Munro was a member of the 1957 legislature which had increased the salary of the office of county commissioner. Under then existing constitutional provisions, there were absolute prohibitions against the salary of any office being increased during the term of office. Const. art. 3, § 25 (amendment 31); art. 2, § 25 (amendment 35); art. 11, § 8 (amendment 57); and art. 4, § 13. That was before article 30 was adopted in 1968. By constitutional provision the salary at that time could not be increased until the expiration of the term to which the then deceased commissioner had been elected. The salary *of the office* was, thus, not increased during the term of the legislator, Munro.

The *Munro* case is quite different from the instant case for there the salary of the office was not and could not be increased until the expiration of the existing *term*. Here the salary of the *office* has been increased. Bruce K. Chapman, the incumbent, is presently receiving the increased salary.

 The salary is provided by law for the office. The salary thus attaches to the office. *The salary of the office has been increased* with the attempted proviso that certain persons are not eligible to receive the benefit of the increase. We do not have to decide if a statute could ever provide for different salaries for different persons depending on which person holds the same elective office during the same time period. That question is not before us.

The constitutional prohibition is against the legislator holding an office, the emoluments of which (that is the office) has been increased.

Two other matters require a brief mention. Argument was made by two intervenors, both laymen appearing pro se, that the constitutional provision contained in Const. art. 2, § 13 violated the equal protection requirement of the federal constitution. The classification involved is a proper one. In support of that proposition we need look no farther than the federal constitution itself in which article 1, sec-

tion 6 contains a substantially identical provision to article 2, section 13 of the Washington State Constitution.

■ Some argument has also been made that the constitutional provision is unwise in that it deprives the state of the services of some of its best citizens in public office. Such an argument is not properly addressed to the judiciary.

The wisdom of statutes or of constitutional provisions is not subject to judicial review. *State v. Carey*, 4 Wash. 424, 30 P. 729 (1892); *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 96 P. 1047 (1908); *Treffry v. Taylor*, 67 Wn.2d 487, 408 P.2d 269 (1965); *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 459 P.2d 937 (1969).

That rule applies with the greatest force to the fundamental law itself, the constitutional provisions. The courts cannot engraft exceptions on the constitution, "no matter how desirable or expedient such . . . exception might seem." *State ex rel. O'Connell v. Port of Seattle*, 65 Wn.2d 801, 806, 399 P.2d 623 (1965).

For the reasons stated the writ will be granted, and respondents Ceccarelli and Laughlin are not eligible to be elected to the office of Secretary of State at the 1975 elections.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, and BRACHTENBACH, JJ., concur.

FINLEY, J. (dissenting)—The majority takes an overly simplistic and, it appears to me, a somewhat naive approach in its evaluation and resolution of the issue in the instant case. Consequently, because of this and for more specific and definitive reasons subsequently stated, I must dissent.

The court is confronted in this matter with a typical, often-recurring problem, *i.e.*, the necessity of judicial interpretation of a provision of the state constitution. In this respect, our function is to determine the meaning of the constitutional provision *in relation to the facts involved in*

*this particular case.* The function is not to be performed by a purely mechanical application of legalese in a rarified conceptualistic vacuum.

The majority focuses upon and embraces one of the most venerable, often used, and occasionally misunderstood maxims of interpretation to the effect that words or a collocation of words or phrases (in the constitution, in a statute, or other legal document) which can be said to be unambiguous require no interpretation or construction. The fallacy in embracing this old axiom too enthusiastically lies in the fact that there are two long recognized, highly respectable, and much used methods of interpretation: (1) the literal approach, and (2) the liberal or functional method. The two methods are antithetical but, again, each is a recognized and legitimate tool employed by courts in the process of construing and giving substance or juristic consequence to legal phraseology. The "nonambiguity" axiom is, in effect, the alter ego of, or another way of, expressing the literal approach or method of interpretation. In the instant case, the application of the maxim is a judicial choice which is made, and *the result is a categorical rejection* of the functional approach without conceding its existence.

It so happens that the statement by the majority that the provisions of Const. art. 2, § 13[1] are unambiguous is made in the face of the fact that this provision has been before the court in a number of cases cited by the majority in which the members of the court have disagreed as to the meaning of the constitutional language. This, and the fact that the members of this court today dispute the meaning of that same language, leaves little doubt in my mind that the majority's rationale is unduly rigid and ill founded.

I am convinced that the emphasis should be placed on the intent and purpose of the constitutional language at

---

[1]Const. art. 2, § 13, reads:

"No member of the legislature, during the term for which he is elected, shall be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

issue, and not on its literal meaning. In fact, one of the most basic rules of construction is that the spirit or intention of the law prevails over the letter of the law. *E.g., Department of Revenue v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973).

The intent and purpose of the provision, in my judgment, is to prevent members of the legislature from benefiting or profiting immediately and directly either by being appointed or elected to an office which was created, or benefiting from an increase in the salary of an office when either event was brought about by the enactment of a statute when the particular legislator was a member of the legislature that acted upon the particular measure.

The salary of the Secretary of State was increased by Laws of 1975, 1st Ex. Sess., ch. 263, p. 869, but the proviso of chapter 263, article 5, page 870,[2] prohibits any then member of the legislature from receiving and benefiting from the increase in salary, *i.e.,* the emoluments of the Office of Secretary of State.

In *State ex rel. O'Connell v. Dubuque,* 68 Wn.2d 553, 567, 413 P.2d 972 (1966), this court again emphasized the strong public policy that exists in favor of eligibility for public office and in preserving for the electorate a greater freedom of choice among potential candidates for office. In the *Dubuque* case, at page 567, the court reasoned that article 2, section 13, is

> designed in part to prevent a member of the legislature from increasing the salaries of public officials and then, during the term for which he was elected legislator, ma-

---

[2]The proviso states:

"PROVIDED FURTHER, That a member of the legislature whose term of office is partly co-extensive with or extends beyond the present term of office of any of the officials whose salary is increased by virtue of the provisions of sections 1 through 5 of this act shall be eligible to be appointed or elected to any of the offices the salary of which is increased hereby *but he shall not be entitled to receive such increased salary until after the expiration of his present term of office and his subsequent election or reelection to the office to which he was appointed or elected respectively during his term of office as legislator.*" (Italics mine.)

neuvering to obtain the increased salary without an intervening election. But the words of limitation describe only the legislator's term of office. If the office be elective, then the legislator should have the right to stand for election to it in common with all other citizens of the state when the term receiving the increased salary does not substantially overlap the legislative term.

In the instant case, neither Ceccarelli nor Laughlin could benefit from or receive the increased emoluments of the Office of Secretary of State unless (a) one of these two potential candidates is elected in the November 1975 general election, and until (b) the current term of office in the legislature of the successful candidate expires on January 10, 1977, and unless (c) the successful candidate is re-elected to the position of Secretary of State in a subsequent election. Thus, the electorate has an opportunity to twice pass upon and sanction the action of the successful candidate who was a member of the legislature when it approved the salary increase for the Office of Secretary of State. In no event could the individual's term receiving the increased salary as Secretary of State overlap with a current legislative term. The limitations in the proviso of chapter 263 not only fulfill the requirements of *Dubuque* but also protect and foster the right of the electorate to choose their elected public officials.

Before concluding, I feel compelled to point out that the majority's citation of *State ex rel. Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 247 P.2d 787 (1952), in support of the nonambiguity approach is inapropos, to say the least. If ever there was a decision of this court that rejected the literal approach and emphasized the liberal or functional approach in regard to the problem of constitutional interpretation, *State ex rel. Evans v. Brotherhood of Friends, supra,* is that case. The majority simply lifts one sentence out of context and misapplies it in another.

For the reasons indicated, I must disagree and dissent.

Utter and Horowitz, JJ., concur with Finley, J.