[No. 84907-2.   En Banc.]
Argued May 24, 2011.     Decided July 28, 2011.

THE CITY OF BOTHELL, *Petitioner*, v. JAMES K. BARNHART, *Respondent*.

*Joseph N. Beck, City Attorney,* and *Paul R. Byrne II, Assistant,* for petitioner.

*Mark R. Stephens* (of *The Law Office of Mark R. Stephens*), for respondent.

*Daniel B. Heid* on behalf of City of Auburn, amicus curiae.

¶1 FAIRHURST, J. — The city of Bothell, which encompasses portions of both King County and Snohomish County, charged James K. Barnhart in Bothell Municipal Court with stalking in the Snohomish County portion of the city. The jury, which was composed of two King County and four Snohomish County jurors, ultimately convicted Barnhart. The Court of Appeals reversed Barnhart's conviction because the impaneling of the King County jurors, although valid under RCW 2.36.050, violated article I, section 22 of the Washington Constitution. We affirm the Court of Appeals and hold that the composition of Barnhart's jury violated his right to an "impartial jury of the county in which the offense is charged to have been committed." WASH. CONST. art. I, § 22.

## FACTS AND PROCEDURAL POSTURE

¶2 On April 3, 2007, Bothell charged Barnhart with the crime of stalking. While Bothell, Washington, encompasses portions of both Snohomish County and King County,[1] both parties concede that the alleged stalking occurred entirely within Snohomish County. The case was tried before a jury in Bothell Municipal Court.

¶3 Pursuant to RCW 2.36.050, the Bothell Municipal Court drew its jury panel from Bothell regardless of the

---

[1] There are six multicounty cities located in Washington, including Auburn (King County, Pierce County), incorporated in 1891; Bothell (King County, Snohomish County), incorporated in 1909; Coulee Dam (Douglas County, Grant County, Okanogan County), incorporated in 1959; Milton (King County, Pierce County), incorporated in 1907; Pacific (King County, Pierce County), incorporated in 1909; and Woodland (Clark County, Cowlitz County), incorporated in 1906.

county where the jurors resided. The jury ultimately included two residents of King County and four residents of Snohomish County. Before the commencement of trial, Barnhart raised a for-cause challenge to the two King County jurors. The judge denied the for-cause challenges, and Barnhart declined to exercise any of his peremptory challenges. The jury ultimately convicted Barnhart of stalking.

¶4 Barnhart appealed the conviction to the King County Superior Court, arguing, among other things, that the impaneling of King County residents violated article I, section 22 of the Washington Constitution because these jurors were not from Snohomish County, where the crime was alleged to have been committed. Bothell, although arguing that its jury selection procedure was constitutional, did not alternatively argue harmless error or waiver by failure to use peremptory challenges. The superior court affirmed the conviction, holding that no error had occurred because the jury selection procedure was valid under RCW 2.36.050 and that RCW 2.36.050 implements the intent of article I, section 22.

¶5 Barnhart moved for discretionary review. A commissioner of the Court of Appeals granted discretionary review of "whether a jury may include members who reside other than in the county in which the offense is alleged to have occurred." Pet. for Review, App. D at 2. The Court of Appeals reversed Barnhart's conviction, holding the jury selection in Barnhart's trial violated article I, section 22. *City of Bothell v. Barnhart*, 156 Wn. App. 531, 537-38, 234 P.3d 264 (2010).

¶6 In a footnote, the Court of Appeals declined to reach Bothell's alternative grounds for affirmance, harmless error, and waiver by failure to use peremptory challenges. *Id.* at 538 n.2. The Court of Appeals explained that it had granted review of only the constitutional jury selection issue under RAP 2.3(e), that review of these other issues would be "imprudent" given that the issues were not briefed and addressed below, and that Bothell had failed to suffi-

ciently argue why these issues should not be decided against it. *Barnhart*, 156 Wn. App. at 538 n.2.

¶7 Bothell petitioned for discretionary review, arguing that the Bothell Municipal Court jury selection procedure did not violate article I, section 22; that Barnhart waived any claim of error regarding the jury by failing to exercise his peremptory challenges; and that any error that did occur was harmless. We granted review. *City of Bothell v. Barnhart*, 170 Wn.2d 1005, 245 P.3d 226 (2010).

## ISSUES

¶8 A. Did the Bothell Municipal Court violate Barnhart's article I, section 22 rights by selecting jurors from both Snohomish County and King County, when the crime Barnhart was charged with was committed only in Snohomish County?

¶9 B. Should this court reach Bothell's alternative grounds for affirmance when the claims were not raised on appeal to the King County Superior Court and the Court of Appeals on discretionary review expressly excluded those issues from the scope of review?

## ANALYSIS

A. Article I, section 22 of the Washington Constitution

¶10 Bothell argues that selecting jurors from members of the community served by the Bothell Municipal Court under RCW 2.36.050 does not violate article I, section 22 of the Washington Constitution. The Washington Constitution provides, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the *county* in which the offense is charged to have been committed." WASH. CONST. art. I, § 22 (emphasis added). However, the legislature has provided that in courts of limited jurisdiction, such as municipal courts, "[j]urors for the jury panel may be selected at random from the popula-

tion of *the area served by the court.*" RCW 2.36.050 (emphasis added). Neither party disputes that the Bothell Municipal Court jury selection procedure complied with RCW 2.36.050. Rather, Barnhart argues that Bothell Municipal Court's application of RCW 2.36.050 in his trial violated his article I, section 22 right because it permitted the judge to impanel jurors from outside the county where the crime was committed.

¶11 "We presume statutes are constitutional and review challenges to them de novo." *City of Seattle v. Ludvigsen*, 162 Wn.2d 660, 668, 174 P.3d 43 (2007) (citing *State v. Shultz*, 138 Wn.2d 638, 642-43, 980 P.2d 1265 (1999)). The challenger bears the burden of showing the statute is unconstitutional beyond a reasonable doubt. *State v. Lanciloti*, 165 Wn.2d 661, 667, 201 P.3d 323 (2009); *Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998). "When interpreting constitutional provisions, we look first to the plain language of the text and will accord it its reasonable interpretation." *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004). Reasonable interpretation means that "[t]he words of the text will be given their common and ordinary meaning, as determined at the time they were drafted." *Id.* "[I]f a constitutional provision is plain and unambiguous on its face, then no construction or interpretation is necessary or permissible." *Anderson v. Chapman*, 86 Wn.2d 189, 191, 543 P.2d 229 (1975). "The wisdom of statutes or of constitutional provisions is not subject to judicial review." *Id.* at 196. "The courts cannot engraft exceptions on the constitution, 'no matter how desirable or expedient such . . . exception might seem.'" *Id.* (alteration in original) (quoting *State ex rel. O'Connell v. Port of Seattle*, 65 Wn.2d 801, 806, 399 P.2d 623 (1965)).

¶12 The dispute in this case is over the plain meaning of "county" in article I, section 22. Barnhart argues that "county" means nothing more than its legal definition as a subdivision of this state, while Bothell argues that the

framers intended the term "county" to mean "the communities served by the court." Suppl. Br. of Pet'r at 12. In 1889, the framers of our constitution appear to have had a clear understanding of the legal definition of "county," having drafted article XI covering county, city, and township organization. WASH. CONST. art. XI. The framers expressly provided that "[t]he several counties of the Territory of Washington existing at the time of the adoption of this Constitution are hereby recognized as legal subdivisions of this state." *Id.* art. XI, § 1. The framers were familiar with "counties" as legal subdivisions of this state, and their inclusion of the term "county" in article I, section 22 should not be interpreted as referencing any other boundary line.

¶13 This court has previously addressed why the "county" residence requirement was included in article I, section 22, as well as the meaning of "county" within that provision:

> Under the old rule of the common law, the jury was required to come from the vicinage or neighborhood of the place where the crime was alleged to have been committed, or the cause of action, if civil, arose; and it was a ground of challenge if some given number were not summoned from the hundred in which such place lay. This rule was gradually changed until the law was satisfied if the jury was returned from any part of the county, and the words "jury of the county," as used in our constitution, have never been held to mean more than that the jurors, when summoned, should come from some part of the county.

*State v. Newcomb*, 58 Wash. 414, 418, 109 P. 355 (1910). Although recognizing that jurors may be drawn from subdivisions within the county where the crime was committed, we have never held that a juror could be selected from outside the county. *Id.* at 417-18 (upholding constitutionality of statute requiring jurors to be drawn equally from each district within a county where the crime was committed); *State v. Twyman*, 143 Wn.2d 115, 125, 17 P.3d 1184 (2001) (upholding constitutionality of RCW 2.36.050 in the context

of a municipal court with jurisdiction in only one county because although jurors were drawn from only three area codes within the county, all jurors resided in the county where the crime was committed); *City of Tukwila v. Garrett*, 165 Wn.2d 152, 164-65, 196 P.3d 681 (2008) (upholding constitutionality of RCW 2.36.050 in the context of a municipal court with jurisdiction in a city located entirely in one county because although jurors were selected from outside city limits, all jurors were drawn from the county in which the crime was committed); *Lanciloti*, 165 Wn.2d at 671 (upholding constitutionality of RCW 2.36.055 where King County Superior Court is divided into two districts with a superior court in each district drawing jurors exclusively from its district because all selected jurors in the pool still reside in the county where the crime was committed).

¶14 Bothell misconstrues the holdings from the above case law and suggests that article I, section 22 should be violated only where there is a showing that "(1) a 'distinctive' segment of the community (2) is substantially underrepresented in the jury pool (3) as a result of a 'systematic exclusion' of the group." Suppl. Br. of Pet'r at 5 (quoting *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) and citing *Lanciloti*, 165 Wn.2d 661; *State v. Cienfuegos*, 144 Wn.2d 222, 232, 25 P.3d 1011 (2001)). Bothell's citation of federal case law addressing the federal constitution is inapplicable to our analysis under the Washington Constitution.[2] Moreover, Bothell's citation of this court's decision in *Cienfuegos* is misleading because that case also involved only a federal constitutional challenge to the jury. 144 Wn.2d at 232. Finally, Bothell's citation to

---

[2] The federal constitution has been interpreted to require that juries be made up of a "representative cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) (citing U.S. Const. amend. VI). The Sixth Amendment to the United States Constitution does not include the explicit requirement that jurors be drawn from the county where the crime was committed, instead stating that jurors should be drawn from the "state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." Case law addressing jury challenges under the federal constitution are not material to our analysis.

*Lanciloti* actually cuts against the city's argument. In *Lanciloti* we never applied or even discussed the relaxed standard that Bothell favors. Instead, we held that there was no constitutional violation because all jurors were drawn from within the county where the crime was committed. *Lanciloti*, 165 Wn.2d at 669.

¶15 If we were to interpret "county" to mean "community represented by the court" as Bothell requests, we would "violate the basic constitutional precepts that the constitution means what it says, and when it is not ambiguous there is nothing for the court to construe." *Wash. State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674, 763 P.2d 442 (1988). Bothell does not argue that "county" meant something different in 1889, and given the framers' passage of article XI, governing counties and their recognition in this state, their choice of the term "county" in article I, section 22 seems entirely purposeful. *See* WASH. CONST. art. XI, §§ 1, 3. Although Bothell correctly points out that multicounty cities did not exist in 1889 when our constitution was ratified, that does not alter the framers' clear intent to set the jury selection boundary at the county line. To change the definition of "county" to "the community represented by the court" would amount to a holding that the framers did not mean what they said.

¶16 Turning away from the plain meaning of article I, section 22, Bothell argues that interpreting "county" to mean "county" causes a contradiction between article I, section 22, and article IV, section 12. Under article IV, section 12, "The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution." Contrary to Bothell's argument, the plain language of article I, section 22 does not contradict article IV, section 12. "[I]n pursuance of this Constitution" includes the rights of the accused contained in article I, section 22. WASH. CONST. art. IV, § 12. Nothing in RCW 2.36.050 expressly provides that jurors may be drawn from outside the county where

the crime was committed. RCW 2.36.050 is simply legislative authorization to select jurors "from the population of the area served by the court." It should be interpreted consistently with the language of the constitution, not as an exception to it. To the extent that multicounty cities are interpreting RCW 2.36.050 to authorize selection of jurors from counties other than where the crime was committed, those cities are in violation of article I, section 22.

¶17 Finally, Bothell argues historical context demonstrates that the framers never intended article I, section 22 to apply to municipal courts. Bothell argues that because municipal courts are not courts of record, are subject to de novo review in superior court, and under article I, section 21, are subject to the legislature's power to reduce the number of presiding jurors to a number less than 12, the framers must have intended for article I, section 22 not to apply in municipal courts. We have already expressly rejected this argument. *Lanciloti*, 165 Wn.2d at 669 n.5 ("[B]y its plain terms, article I, section 22 does not distinguish between trials in superior or inferior courts. Instead, it speaks in terms of 'criminal prosecutions.' CONST. art. I, § 22."). The distinction between courts of limited jurisdiction and courts of general jurisdiction should not deprive the accused of their jury composition rights under article I, section 22.

¶18 Bothell Municipal Court violated Barnhart's article I, section 22 rights when the judge impaneled King County jurors over Barnhart's objection because the crime he was charged with was committed only in Snohomish County. Because RCW 2.36.050 provides that courts of limited jurisdiction may select jurors from the area served by the court, it is unconstitutional to the extent that multicounty cities such as Bothell apply it to select jurors from counties other than where the crime is alleged to have been committed. Material departure from statutory jury selection requirements is presumptively prejudicial and requires reversal and remand for a new trial. *State v. Tingdale*, 117 Wn.2d

595, 602-03, 817 P.2d 850 (1991). Departure from the constitutional jury selection requirements can require no less. We affirm the Court of Appeals decision that reversed Barnhart's conviction and remanded for a new trial.

## B. Additional issues raised

¶19 Bothell argues that the Court of Appeals erred by declining to reach its claims of waiver by failing to use peremptory challenges and harmless error. "Upon accepting discretionary review, the appellate court may specify the issue or issues as to which review is granted." RAP 2.3(e). The Court of Appeals granted review on a single issue: "whether a jury may include members who reside other than in the county in which the offense is alleged to have occurred." Pet. for Review, App. D at 2; *Barnhart,* 156 Wn. App. at 538 n.2. The Court of Appeals declined to review the waiver and harmless error issues for the following reasons:

> [D]iscretionary review of those issues was neither sought nor granted, and the city did not seek to modify the order granting discretionary review. In addition, the city acknowledged at oral argument that it had not raised these contentions in the [superior court].
>
> . . . .
>
> Further, it would be imprudent for us to address those complex issues for the first time on discretionary review without the benefit of full development of the issues and complete briefing.

*Barnhart,* 156 Wn. App. at 538 n.2. Under RAP 13.7(c), the scope of the Supreme Court's review of a Court of Appeals decision "may be further affected by the circumstances set forth in rule 2.5." RAP 2.5(a) provides that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." However, RAP 2.5(a) goes on to provide that "[a] party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground."

¶20 Even though this court has discretion to accept review of Bothell's alternative grounds for affirmance, we decline to exercise that discretion here. None of the courts below have conducted a thorough analysis of these issues because Bothell elected not to raise them until its Court of Appeals response brief. Given Bothell's choice not to raise these issues during Barnhart's appeal to the superior court, the Court of Appeals did not err by exercising its discretion to limit review to the constitutional jury selection issue. We decline to reach the peremptory challenge and harmless error issues because they were not properly raised in the superior court on direct review, and both issues lack proper briefing or consideration in the courts below.

## CONCLUSION

¶21 We affirm the Court of Appeals decision reversing Barnhart's conviction and remanding for a new trial. We hold that the jury selection procedures in Barnhart's Bothell Municipal Court trial violated article I, section 22 and that RCW 2.36.050 is unconstitutional as applied to municipal courts with jurisdiction over multicounty cities that preside over crimes committed exclusively within one county.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.